Argued November 14, reversed December 12, 1951

MUSGRAVE ET UX. *v.* LUCAS ET UX.

238 P. 2d 780

*W. C. Winslow* and *Roy Harland,* both of Salem, argued the cause and filed a brief for appellants.

*Wallace P. Carson,* of Salem, argued the cause for respondents. With him on the brief were Ralph E. Moody and Allan G. Carson, both of Salem.

404

Before BRAND, Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action for damages for alleged fraud, brought by Walter Musgrave and Evelyn L. Musgrave, as plaintiffs, against Edward J. Lucas and Caroline Lucas, as defendants. A demurrer and a motion to strike certain portions of the complaint were filed by defendants. Plaintiffs filed an amended complaint. Defendants moved to strike certain parts thereof. The motion was sustained in part, and the matters so stricken were obliterated. Defendants then demurred on the ground that the amended complaint did not state facts sufficient to constitute a cause of action against them. The demurrer was sustained. Plaintiffs refused to plead further, and, on motion of defendants, judgment on the pleadings was entered in favor of defendants. Plaintiffs appeal.

We shall set forth the amended complaint as it stood before the parts successfully moved against were obliterated, noting, however, by parentheses, the portions stricken. Omitting formal parts, the amended complaint alleges:

"I

"That on or about the 2nd day of April, 1948, plaintiffs purchased from defendants a sand and gravel operation, including bunkers for loading the same and the deposit of sand and gravel, located on real property more particularly described as follows: [Here follows a description by metes and bounds of 5.31 acres of land.] for the full purchase price of $5,000.00.

"II

"That said tract of land is situated adjacent to the Willamette River, the east line thereof extending into the river at high water. That the former

bank of the Willamette River close to said east line has been excavated or washed away. That the center portion of said tract has been removed fro [sic] gravel, sand and soil sales to a depth of approximately 15 feet. That during high water the said river fills said excavated portion of said premises and washes against the west boundary thereof. That a short distance to the west and north from said tract is an old slough running north. That said river is threatening to form a new channel across said tract and thence into said slough, *and that further removal of soil, sand or gravel from said premises would alter and modify the course, location and condition of the channel of said river,* and that *such work has never been* and will not be *recommended* by the Chief of Engineers, *or authorized* by the Secretary of War. (Italics ours.)

"III

"(That defendants herein, in their operation of said sand and gravel business on said premises, had never received or obtained a permit or authorization from the Secretary of War to excavate thereon nor to remove soil, sand, or gravel therefrom.)

"IV

"That on November 22, 1946, the War Department of the United States of America ordered the defendants herein to discontinue the removal of sand and gravel from said premises, by mailing to the defendants a letter, a copy of which is in words and figures as follows:

"WAR DEPARTMENT
OFFICE OF THE DISTRICT ENGINEER
PORTLAND DISTRICT
628 Pittock Block
Portland, Oregon

"Address Reply to
THE DISTRICT ENGINEER
(Not to individuals)
"NPPVL

"Refer to file

No. PO 616.4 (Will. R.)-4          November 22, 1946

"Mr. E. J. Lucas,
555 N. Liberty,
Salem, Oregon.

"Dear Sir:

"This office has received a complaint against certain sand and gravel removal operations being conducted in the immediate vicinity of the property of Mr. James Imlah, who resides on R.F.D. No. 1.

"This matter has been under investigation for the last several weeks, and it is found that the above-mentioned operations are being conducted by yourself and your partner. It is also found that the gravel removal operations are creating very serious conditions in that locality. It is noted that the top soil is being removed from an area to a depth of approximately 8 feet for a distance of 400 feet, paralleling and adjacent to the river bank. It is certain that should the bank be opened by virtue of the continued sand and gravel operations in that locality, it would not only in all probability seriously change the channel of the river but it would also endanger some 20,000 acres of bottom land below the point where the operations are being conducted.

"Your operations at that point are definitely in violation of Federal law, in that you have no valid permit issued by this department therefor. In this connection, your attention is invited to Section 10 of the River and Harbor Act approved March 3, 1899, which provides in part 'that it shall not be lawful to excavate or fill or in any manner to alter or modify the course, location, or condition of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of War prior to beginning the same.' (33 U.S.C. 403)

"Therefore, you are hereby directed to discontinue your sand and gravel removal operations

in that locality at once. In the event you fail to comply with this directive, it will most certainly be necessary to refer the matter to the United States Attorney for the protection of the interests of the Federal Government.

"Very truly yours,
(Sgd.) O. E. Walsh,
Colonel, Corps of Engineers,
District engineer

"V

"That at the time of said sale as alleged above, defendants herein, for the purpose of injuring and defrauding plaintiffs, wrongfully, unlawfully and fraudulently represented to the plaintiffs that they knew of no reason why plaintiffs should not continue the operation of said sand and gravel business, that said property was a suitable property for a sand and gravel business; (and that said defendants fraudulently concealed from and failed to disclose to plaintiffs that they had been stopped in their operations upon said premises by the War Department of the United States of America, as disclosed by the letter set forth above, or that they had received any such letter). That said representations were false and fraudulent, and known to the defendants to be false and fraudulent, in this, that said defendants knew of the conditions set forth above and knew that on account thereof further operations would change the course, location or condition of the channel of said river. That said defendants received said letter from said War Department and withheld the information contained therein from plaintiffs in order to induce plaintiffs to purchase said property.

"VI

"That plaintiffs herein, relying upon the representations of defendants, believing the same to be true, (and having no information to the effect that said operations had been stopped by the War Department), or that said premises could not be used

for the further removal of soil, sand and gravel, purchased said premises as aforesaid.

## "VII

"(That on account of the matters and things herein set forth and alleged, plaintiffs have been and are unable to use said premises for the purpose for which the same were purchased, to-wit; for a sand and gravel business, or to remove any sand, gravel or soil therefrom.)

## "VIII

"That at the time of said sale by defendants to plaintiffs there was [sic] located upon said premises approximately 265,000 cubic yards of topsoil, sand and gravel, of the reasonable value of 15 cents per cubic yard.

## "IX

"That on account of the false and fraudulent representations aforesaid, plaintiffs have been and are damaged in the sum of $39,750.00."

■ The principal question for decision is whether this complaint states a cause of action against defendants. Where, as here, the complaint is challenged by a demurrer, it is to be construed strongly against the pleader. *Aune v. Oregon Trunk Railway,* 151 Or 622, 626, 51 P2d 663; *Brosius v. Hazelwood,* 127 Or 635, 637, 271 P 992.

■ However, a demurrer admits as true all facts well pleaded and all the intendments and inferences therefrom that can properly and reasonably be drawn. *Mattoon v. Cole,* 172 Or 664, 669, 143 P2d 679; *Lothstein v. Fitzpatrick,* 171 Or 648, 662, 138 P2d 919; *Wills v. Nehalem Coal Co.,* 52 Or 70, 76, 96 P 528.

33 USC § 403 (1940) (River & Harbor Act), in part provides:

"* * * and it shall not be lawful to excavate or fill, or in any manner to alter or modify the

course, location, condition, or capacity * * * of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of War prior to beginning the same."

33 USC § 406 (1940), provides:

"Every person * * * that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of War in pursuance of the provisions of said section 404, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished * * *."

33 USC § 413 (1940), charges the Department of Justice with the duty of conducting all legal proceedings necessary to the enforcement of the provisions of § 403, as well as other sections of the River & Harbor Act; and for the better enforcement of the law and to facilitate the detection and bringing to punishment of such offenders, the officers and agents of the United States in charge of river and harbor improvements, and the assistant engineers and inspectors employed under them by the authority of the Secretary of War, as well as other officials, are vested with power and authority to swear out process, and to arrest and take into custody, with or without process, any person or persons who may commit any of the prohibited acts, although arrests without process are prohibited except where the offense is committed in the presence of the arresting officer.

33 USCA § 540 (June 20, 1938, c. 535, § 1, 52 Stat. 802, amended July 26, 1947, c. 343, Title II, § 205 (a), 61 Stat. 501.), provides that federal investigations of rivers, harbors, and other waterways "shall be under the jurisdiction of and shall be prosecuted by

the War Department under the direction of the Secretary of War and the supervision of the Chief of Engineers * * *.''

The Willamette river is a navigable water of the United States within the purview of these statutes.

■ Comprehensively stated, the elements of actionable fraud consist of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. *Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757. To state a good cause of action, it is necessary that each and every one of the essential elements of fraud be alleged.

■ Actionable fraud may be committed by a concealment of material facts as well as by affirmative and positive misrepresentations. In 37 CJS, Fraud, 244, § 16 a., it is said:

"An exception to the rule that mere silence is not fraud exists where the circumstances impose on a person a duty to speak and he deliberately remains silent. It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Where the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood."

See also *Palmiter v. Hackett,* 95 Or 12, 17, 185 P 1105, 186 P 581.

Bearing in mind the statutory provisions referred to and the legal principles stated, we proceed to a consideration of the facts alleged in the complaint which are well pleaded, together with all the intendments and inferences that can properly and reasonably be drawn therefrom. By their demurrer, what do defendants admit as being true?

In the first place, they admit that they were selling and plaintiffs were purchasing a sand and gravel operation, including equipment necessary to the conduct of such a business. The land itself was important only as the source from which the sand and gravel was to be secured. Defendants also admit that further sand and gravel operations on the land in question will alter or modify the course, location and condition of the channel of the Willamette river, the doing of which, unless previously recommended by the Chief of Engineers and authorized by the Secretary of War, would constitute a crime.

Defendants further admit "that such work has never been and will not be recommended by the Chief of Engineers, or authorized by the Secretary of War." The fact that such operations, which admittedly would change the channel of the river in violation of law, were never recommended or authorized is a statement of an ultimate and material fact, a fact peculiarly within the knowledge of defendants. Although the allegation that such work "will not be recommended * * * or authorized * * *" might, on its face, appear to be purely speculative, nevertheless, it is an allegation of an ultimate fact. No motion was directed to the same. Under the theory of the complaint it is

a material averment. We are not concerned with plaintiffs' ability to prove that fact or any other fact alleged.

■ In the light of the allegations of paragraphs I and II, we believe the allegations of paragraph III of the complaint, which were stricken by the trial court, are material. In paragraph III it is alleged, and defendants admit, that they had never received a permit or authorization to excavate on the land in question, nor to remove soil, sand, or gravel therefrom. This becomes important in view of the notice of an alleged violation of the law on their part, which they received, as alleged in paragraph IV. The fact that defendants received such notice, together with the fact that they had not complied with the law, refers to material matters connected with the sale and purchase of this sand and gravel business.

■ We agree with defendants that the letter pleaded at length in paragraph IV is no evidence of the existence of the substantive facts therein set forth. That is to say, the contents of this letter are not competent to establish the alleged fact that the sand and gravel operations will alter or modify the channel of the river, nor that defendants had violated or were violating the federal statutes as claimed. As substantive evidence of those facts, the letter is inadmissible. *Ebbert v. First Nat. Bank of Condon*, 131 Or 57, 67, 68, 69, 279 P 534.

However, the receipt of this letter by defendants does serve a useful and material purpose in this case. It directed their attention to the fact that the District Engineer, who, under the law, is charged with the duty of investigating such matters and of assisting in the Act's enforcement, had made an investigation of their operations and, based thereon, demanded that such

acts be discontinued if prosecution was to be avoided. Their right to operate had been directly challenged by competent authority.

◼ Manifestly, the mere giving of such notice to defendants is, of itself, a highly important and material fact. Whether, in truth, the conduct of their business would actually change the channel of the river, or otherwise be in violation of law, is not the material consideration as respects the matter now under discussion. The pertinent thing is that defendants had been threatened with litigation of a serious nature, by a responsible official of the federal government. Obviously, in selling the business to plaintiffs, good faith demanded, and it was the positive duty of defendants to make, a full disclosure of these facts. Instead, as alleged, defendants, "for the purpose of injuring and defrauding plaintiffs," affirmatively and "fraudulently represented to the plaintiffs that they knew of no reason why plaintiffs should not continue the operation of said sand and gravel business." (Paragraph V of the complaint.)

◼ We notice the other allegation of paragraph V, which was stricken by the trial court, to-wit; "and that said defendants fraudulently concealed from and failed to disclose to plaintiffs that they had been stopped in their operations upon said premises by the War Department of the United States of America, as disclosed by the letter set forth above, *or that they had received any such letter.*" (Italics ours.)

We need not decide whether the foregoing allegation is equivalent to charging that defendants were actually stopped in their operations by the War Department. A positive allegation to that effect would, of course, be material. But aside from that, it is evident that concealment of the fact that "they had

received any such letter" is quite material, and defendants, by their demurrer, admit they concealed this information with fraudulent intent and purpose.

It is elementary that when a motion to strike is directed against a particular part of a pleading, and any portion of the matter moved against is material, the motion should be denied. This is true, even though a part of the allegation in question is wholly immaterial and, on proper motion, would be stricken. Tested by this rule, the order of the court striking the entire allegation was error. We, therefore, treat the allegation as remaining in the complaint.

The defendants, by their demurrer, further admit that "said representations were false and fraudulent, in this, that *defendants knew of the conditions set forth above and knew that on account thereof further operations would change the course, location or condition of the channel of said river*. That said defendants received said letter from said War Department and withheld the information contained therein from plaintiffs in order to induce plaintiffs to purchase said property." (Italics ours.)

The allegation that "defendants knew of the conditions set forth above" refers to all the conditions alleged in the prior paragraphs of the complaint, including the allegations of paragraphs I, II, III, and IV, in particular. The allegation that defendants knew that their operations, if continued, would change the course, location, or condition of the channel of the river, is material and important. Presumably, with the knowledge that their continued operations would violate the federal statute, defendants discontinued them. It cannot be presumed that they knowingly persisted in performing unlawful acts.

The trial court struck from paragraph VI all

that part thereof reading as follows: "and having no information to the effect that said operations had been stopped by the War Department." In the absence of a direct allegation in the complaint that such operations had actually been stopped by the War Department, it would have been proper to strike that portion of the allegation referring to the same. However, the words "and having no information" in the stricken portion have reference not only to the matters regarding the War Department, but also to the proper allegation "that said premises could not be used for the further removal of soil, sand and gravel." It follows, therefore, that the words "and having no information" in the stricken allegation were material and should not have been stricken. In the light of what has been said above, we treat the whole allegation as remaining in the complaint. Lack of knowledge on the part of plaintiffs as alleged is largely, if not wholly, the basis of their right to rely upon the representations made.

In paragraph VII it is alleged that, on account of the matters pleaded, plaintiffs have been and are unable to use said premises for the purpose for which the same were purchased. This paragraph was stricken by the trial court. The court erred. This is an ultimate fact that plaintiffs will be required to establish by evidence. Clearly, plaintiffs cannot recover in this action unless they are able to prove that their operation of the premises for the purposes in question has been and is prevented. That is the very essence of their cause of action.

The remaining allegations of the complaint refer to alleged damages. We are of the opinion that the complaint states a cause of action; every essential

element of actionable fraud is pleaded. The trial court erred in sustaining the demurrer.

Additional assignments of error were argued in this court, but the conclusion reached respecting the trial court's error in sustaining the demurrer renders unnecessary a consideration of the other matters.

Judgment reversed, and cause remanded for further proceedings.