Argued May 8, reversed and remanded October 9, petition for
rehearing denied November 8, 1972

MAYER, *Plaintiff,* KLEINKNECHT, *Appellant, v.*
BASSETT, *Respondent.*

501 P2d 782

*Michael J. Esler,* Portland, argued the cause for appellant.

*James O. Goodwin,* Oregon City, argued the cause for respondent.

BRYSON, J.

This is a suit by Donald J. Mayer, assignor, and Audrey Kleinknecht, assignee, to reform and foreclose a second mortgage executed by defendant on real property in Clackamas County, Oregon. The defendant's

---

* Holman, J., did not participate in the decision of this case.

answer alleges no delivery of the mortgage by defendant to Mayer and certain set-offs against plaintiff Mayer.

Plaintiff Mayer assigned the mortgage to the Community Bank, which in turn assigned it to plaintiff Kleinknecht, presumably for collection or suit. After Kleinknecht brought suit, defendant joined Mayer as a necessary party plaintiff, claiming set-offs against Mayer, assignor of the mortgage. Mayer is not a party to this appeal.

The origin of the second mortgage is as follows: Defendant Bassett, plaintiff Mayer, and Elwyn Boly, deceased, entered into a partnership or joint business venture to invest in certain enterprises. Defendant devoted considerable time on behalf of these enterprises. As a partner, he was handicapped in these efforts by his indebtedness in the amount of $16,000 for state and federal income taxes and demands of miscellaneous creditors. At this time, Mayer had a substantial financial interest in Sawyers Viewmaster Company. When that company merged with GAF Corporation, Mayer became interested in securing more shares of GAF Corporation stock. However, he was prevented from purchasing additional GAF Corporation shares in his name by securities regulations concerning insider trading.

To free defendant of his debts, Mayer, on November 30, 1965, pledged some of his own shares of GAF Corporation as security for a bank loan of $16,000 to defendant. On March 25, 1966, the same bank advanced $25,000 to defendant, which was used to purchase GAF shares in the name of the defendant. These shares and other securities belonging to Mayer were pledged as security for the second loan. Both of

the loans and the stock purchase were negotiated in defendant's name.

Defendant and Mayer anticipated that defendant's profits from the partnership would be sufficient to repay the bank loan. They orally agreed that defendant's profits, if any, would be used to satisfy the $16,000 loan.[①] However, the profits failed to materialize. Defendant failed to make payments on the principal or interest of this loan. Eventually the bank called the loan and sold the Mayer stock which they held as collateral on the $16,000 loan to defendant.

The evidence discloses that the mortgage was prepared and executed by defendant on December 23, 1965, and that he recorded the same on May 17, 1966, but retained possession of it. The defendant alleged that the mortgage was not delivered to plaintiff Mayer and contends it is not a valid mortgage. Mayer testified

---

[①] Mr. Mayer also testified that payment would be made from profits they hoped to realize on the purchase of additional GAF Corporation stock:

"* * * We bought stock and it was sent to the bank for the balance of the collateral for the second loan, the principal purpose of that was in hopes that there would be a profit on this stock. At this point Mr. Bassett would use that to pay this first loan off from the bank, the $16,000.00. That was primarily the purpose * * *."

He also testified on cross-examination:

"Q You were happy to use A. J. Bassett as a front man on that transaction, weren't you?

"A Sure, for two reasons, one is that he could first, out of any profits pay back, take his taxes out of the profit and the balance could pay me back.

"* * * * *.

"A I merely hoped that we would make something from it and we hoped that we would make from Pacific Surfacing as we hoped that we would make from Rotolift, but none of these things came about * * *."

No profit was realized on the stock transaction.

that the defendant did not "actually deliver the mortgage paper to my hands, but I did know that it had been filed and that it was in my benefit." The defendant testified, "I don't really know that Mr. Mayer ever knew about it [mortgage], I don't think so."

■ In the recent case of *Reed v. Reed,* 261 Or 281, 493 P2d 728 (1972), the grantors prepared and recorded a deed and thereafter retained the deed in their possession. We held "* * * [t]he recording of the deed created a presumption of delivery which was not rebutted by plaintiff's evidence * * * [Citations omitted]." We conclude that the defendant's evidence in this case did not overcome the presumption of delivery of the mortgage. The mortgage between Mayer and defendant was valid.

A more difficult issue is presented in determining the purpose intended by the giving of the mortgage and how it was to be satisfied. Both parties agree there was no note prepared or delivered evidencing the loan. The face of the mortgage recites that defendant, on demand, promised to pay $16,000 to Mayer. There is no provision for payment of interest or attorney fees.

Mayer testified that at the time the $16,000 loan was negotiated, "we did discuss that he would protect me in a second mortgage on his house, in case something happened to him, in the event he couldn't finance his home, at a later date if we paid some of the other ventures and it became due rather than me having to sacrifice my stock he would do that to pay off the loan." According to Bassett, Mayer had expressed concern over the fact that their agreement with respect to Mayer's priority right to defendant's partnership profits was not expressed in writing. Bassett stated

that he had suggested the mortgage merely as a memorial of this priority agreement. Thus, according to Bassett, the mortgage was not intended to be a security device.

■ The issue presented is whether this mortgage was intended as security to protect Mayer in the event of defendant's default in payment of the $16,000 loan from the bank, which was secured by the pledge of Mayer's stock. A cardinal rule in the construction of legal instruments between parties is to ascertain the intention of the parties. In *Meier v. Kelly*, 20 Or 86, 93, 25 P 73, 76 (1890), we stated, "[I]n our construction of the mortgage we are confined to the intention of the parties as gathered from its contents." Cited with approval in *Harvey v. Campbell*, 107 Or 373, 433, 214 P 348 (1923). Also, "in construing a mortgage the court will not, unless constrained to do so by the terms of the instrument considered in the light of the surrounding circumstances, give to it such interpretation as would make it void." 55 Am Jur 2d 303, Mortgages § 175. When read in light of these rules, the mortgage suggests that it was drawn as security for a debt. It contains no language indicating that the mortgage was intended merely to acknowledge Mayer's priority right to defendant's partnership profits.

The defendant's amended answer alleged "that said alleged mortgage was executed to secure a loan to defendant from plaintiff Mayer * * *," but contended the loan was to be repaid from partnership assets. At the time of trial the defendant attempted to retract this admission found in his pleadings. On cross-examination he was asked:

"Q Now, I note in the amended answer, you also state on page one that the mortgage was executed to secure a loan to the defendant from the

plaintiff Mayer, you said that right in your pleadings in the answer on page two, page one of the amended answer.

"A I shouldn't have.
"* * * * *

"A I signed that answer, I don't think that we are using that term in the same sense. The mortgage was not executed for that purpose * * *."

■ It is difficult to conceive how the defendant could misjudge the legal effect of the mortgage which he prepared and recorded. He had practiced law in Oregon for many years. If he desired simply to memorialize a prior agreement with Mayer, the use of an unambiguous mortgage for such a purpose was certainly a curious vehicle. The defendant should not be allowed to escape liability under the terms of a mortgage because of his own imperfect explanation of his intentions. *Cf. King v. Holbrook,* 38 Or 452, 63 P 651 (1901), and *Manley v. Smith,* 88 Or 176, 171 P 897 (1918).

■ We hold that the mortgage was intended as security for Mayer in the event defendant defaulted in the payment of the $16,000 loan by the bank to defendant, thereby resulting in the sale of Mayer's stock which he pledged to secure the defendant's debt to the bank.

The trial court made written findings of fact which stated, in part:

"3. That between the defendant and Donald J. Mayer it was the intent that said sum [$16,000] would be paid from the profits of the joint ventures.

"5. That defendant is entitled to a set-off in the amount of $16,000 by reason of Donald J. Mayer's misconduct in the varied business ventures.";

and entered judgment which provided, in part:

"* * * The court made various findings after

the trial in a Memorandum Opinion which are specifically incorporated herein, * * * and the Court further found that there was evidence of services rendered in payment of the sum of $16,000.00 from the defendant to the plaintiff's predecessor in interest and that in equity, was a complete set-off * * *."

The plaintiff first assigns as error that "the trial court erred in holding that defendant had discharged the $16,000 debt by rendering services to plaintiff's predecessor in interest."

The defendant did not plead as an affirmative defense that he had rendered services to plaintiff's predecessor, Mayer, in payment of the sum of $16,000. In his brief, the defendant states, "* * * We repeat that there was no issue in this case of defendant paying a debt with services. * * * The defendant is not claiming pay for rendering services and therefore neither the factual situation on the one hand, nor the legal question on the other, concern us."

Because of the court's finding set forth in the judgment, we have reviewed the testimony regarding services that defendant might have rendered. There is evidence that the defendant performed various services on behalf of the partnership. "A partner is not entitled to remuneration for acting in the partnership business (ORS 68.310(6)) in the absence of an agreement to the contrary [Citations omitted]." *McBride v. Fitzpatrick,* 224 Or 457, 467, 356 P2d 947 (1960). There is no evidence of such an agreement between Bassett and other members of the partnership.

Defendant rendered just one service to Mayer personally. On that occasion defendant made a two-

day trip to Canada and return in the company of Mr.
Mayer, and, as secretary of a corporation in which
Mr. Mayer was interested, he executed a form instru-
ment of "The Canadian Bank." While defendant was
in Canada he went to the bank and got the money which
supposedly belonged to Mayer. Concerning this trans-
action, the defendant testified:

"Q   Did you get any part of the $60,000?
"A   No, I never was promised any and I never
received anything."

There is no evidence that defendant expected com-
pensation for his trip to Canada or that Mayer agreed
to the cancellation of the $16,000 debt for the services
rendered Mayer by the defendant. Furthermore, the
defendant does not contend that he paid the $16,000
by rendering services.

"By agreement or consent of a creditor, services
rendered by the debtor may constitute a payment; but,
in the absence of such agreement or consent, the serv-
ices cannot be considered as payment, and services
voluntarily rendered do not extinguish or reduce the
debt." 70 CJS 244, Payment § 35. We conclude that the
defendant did not satisfy his debt of $16,000 by the
performance of services.

Plaintiff lastly assigns as error that "the trial
court erred in holding that defendant was entitled to
a $16,000 set-off against the debt by reason of the
misconduct of plaintiff's predecessor in interest." This
relates to the finding of the court "of Donald J.
Mayer's misconduct in the varied business ventures."
This finding by the trial court misconceives the nature
of the debt in question. Mayer's loan to Bassett was a

private transaction. Mayer pledged his personal stock to secure the loan for defendant in order that defendant might pay his personal debts. There is no evidence to indicate that either the money borrowed or the stock pledged had any connection with or effect on the partnership accounts. The relationship of defendant and Mayer as partners was distinct from their personal relationship as debtor and creditor.

■ Defendant apparently contends that Mayer's alleged misconduct in handling partnership transactions created a debt in favor of the other partners, Boly, deceased, and defendant against Mayer which they could off-set against claims of Mayer or his assignees. To determine whether Mayer owes Bassett any money because of Mayer's mishandling of the parties' partnership affairs would require a full accounting.

> "As a general rule, a partner against whom an action is brought by another partner upon a transaction separate from, or independent of, the partnership business cannot, where there is an existing or an unsettled partnership, or, as it has been said, in the absence of a final accounting, claim as a set-off any sum based upon a claim arising out of partnership business or transactions. Annot., 93 ALR 293 (1934).

*See* Annot., 168 ALR 1108, 1109 (1947). In *Birkemeier v. Orino,* 168 Or 385, 123 P2d 185 (1942), plaintiffs brought an action at law to recover money loaned to defendant. Defendant interposed counterclaims based on plaintiffs' alleged failure to contribute their share to a partnership formed by the parties. The court held that the loan transaction was not a partnership matter and that an equitable counterclaim based on failure to contribute was not material to the issues raised by

the complaint. As to a legal counterclaim for damages, the court said:

> "The authorities, cited by defendant, announce the well-known rule that whenever there has been any breach of an express stipulation between persons who are partners, an action for damages will be sustainable unless the breach or the stipulation itself, or both, are such that they involve the whole partnership business and accounts, and the damages can be determined only by first settling those accounts. \* \* \* It is evident that in the case at bar it will be necessary that an accounting be had before the amount, if any, advanced by defendant in excess of the proportionate share required by the agreement of the parties can be determined. This can be done only by an equitable proceeding \* \* \*." 168 Or at 389.

■ In the case at bar, the parties are in equity. However, the pleadings present no request for an accounting and the third partner, Boly, deceased, or his representative, is not a party to the case. Therefore, the claims of defendant, as a partner, against Mayer or his assignees arising out of the partnership transactions cannot be used to reduce or offset the private nonpartnership claim between Mayer or his assignees and the defendant until there has been a winding up or a final accounting of the partnership affairs. There was no winding up of the partnership ventures.

We conclude that the court erred in finding "[t]hat defendant is entitled to a set-off in the amount of $16,000 by reason of Donald J. Mayer's misconduct in the varied business ventures."

As previously stated, the trial court found that Mayer and defendant intended that the $16,000 "would be paid from the profits of the joint ventures." Unfor-

tunately, the partnership ventures produced no profits. The defendant argues "that if the money was to be repaid out of the projects, *and not otherwise,* it would make no difference whether the projects were valuable or worthless." (Emphasis supplied.) This raises the question as to whether the parties agreed that the $16,000 loan to Bassett was to be repaid solely out of the profits of the parties or the partnership's business ventures.

The amended answer of the defendant alleged, "That said alleged mortgage was executed to secure a loan to defendant from plaintiff Mayer, and said loan was to be repaid solely from said partnership assets, all according to the agreement of the three said partners, that partnership funds were available for payment and that defendant has therefore paid said alleged mortgage."

Only two witnesses testified regarding repayment of the loan. Mayer testified that they hoped to make a profit from the purchase of additional shares of GAF stock and from partnership ventures and this would pay off Bassett's $16,000 loan from the bank; that after their business ventures failed he requested payment of the loan from Bassett. Mr. Bassett testified that Mayer told him, "We can pay it [loan] out of the projects." He also testified that before the money was borrowed from the bank that "he [Mayer] explained it to me, that the money would be repaid out of the projects and that is when, just as he explained it this morning, the sixteen thousand was credited to me * * * we had plenty of projects going from which the money would be repaid and the deal didn't die * * *."

There is no evidence to support the defendant's

allegation that the loan was to be repaid solely from partnership assets; also, there is no evidence to support the allegation that the three partners entered into such an agreement. In *Mignot v. Parkhill,* 237 Or 450, 391 P2d 755 (1964), the plaintiff brought an action to recover money for building a road. The contract provided that the defendant would not be obligated to pay plaintiff until such time as defendant had himself received the money from a lumber company. The contract further provided that defendant agreed to pay plaintiff $123,700 without interest, the price of the road construction work. The defendant contended that his receiving the money from the lumber company was a condition precedent to his paying plaintiff. The court held:

> "* * * It is not always easy, however, to determine whether the intention of the parties is to limit the right of the promisee to payment from a specified fund. * * * We think, however, that where the contract contains a definite and unambiguous promise to pay for labor and materials performed and furnished, or for other services, equally clear and unambiguous language, expressing the intention that the happening of a contingency over which the promisee has no control shall be a condition precedent to payment, must be found in the contract before the positive and absolute agreement to pay will be considered as superseded. Nikolaus v. Howe, 122 Cal App 2d 422, 265 P2d 99." 237 Or at 457-58.

In the case at bar the mortgage provided that defendant, on demand, promised to pay $16,000 to Mayer. This is an unambiguous promise to pay.[9] There is no

---

[9] The mortgage is presumed to correctly state the terms of the agreement. Williams v. Swartz, 222 Or 223, 229, 350 P2d 1079 (1960).

equally clear and unambiguous language in the mortgage that payment of the loan would be made solely from partnership assets, and there is no testimony establishing an oral agreement to that effect. The most that can be said is that both parties hoped there would be ample profits from the additional GAF stock or the partnership ventures to allow defendant to satisfy the bank loan. The parties simply failed to foresee that their investment might offer no profits.

Plaintiff Kleinknecht pleaded that the mortgage be reformed and prayed that it provide for interest on the loan and reasonable attorney's fees.

■ It is essential, in order to obtain a decree reforming a written contract, that the facts necessary for the allowance of the remedy be proven by clear and convincing evidence. 2 Restatement 981, Contracts § 511.

■ The written mortgage is silent on these matters. Moreover, there is no evidence that defendant agreed to mortgage his property, with interest, or to pay attorney's fees in the event of foreclosure. Interest cannot be recovered in the absence of an agreement to pay interest unless authorized by statute. *Dowling v. Albany Planing Mill,* 238 Or 425, 431, 395 P2d 143 (1964).

ORS 82.010 provides:

"(1) The legal rate of interest is six percent per annum and is payable on:
"(a) All moneys after they become due; * * *.
"* * * * * *"

The mortgage provided that the defendant would pay on demand, after date, to the order of Donald J. Mayer, the sum of $16,000. The plaintiff is not entitled to reform the contract to provide for the payment of

interest or attorney's fees, and the trial court properly denied reformation in this respect. However, the plaintiff is entitled to recover interest from the date of demand. Interest is allowed from the date of demand, notwithstanding the right to recover the money is denied in good faith. *Gellert v. Bank of California Nat. Assn.,* 107 Or 162, 214 P 377 (1923).

Mr. Mayer testified:

"* * * The banks were all getting tight and closing up on me and I was the only one that had collateral, so I thought at least if he could help me just by repaying this to take care of that one it would help * * *."

There is no evidence of a demand for payment until such time as the complaint in this action was filed. Therefore, the defendant is entitled to receive interest at the legal rate of six percent, pursuant to ORS 82.010(a), from the date of filing of the complaint in this suit.

■ This is a suit in equity and we try the case *de novo.* ORS 19.125 (3); *Mohr v. Lear,* 239 Or 41, 395 P2d 117 (1964).

We conclude that there was a valid mortgage given by the defendant to secure the payment of the $16,000 loan and that no payment has been made; plaintiff Kleinknecht may foreclose the mortgage in the amount of $16,000 with interest at six percent from the date of filing this suit but without attorney's fees; the decree of the trial court is reversed except as to that portion denying reformation; and the case is remanded for further proceedings in conformity with this decision.