Argued November 2, 1978, affirmed with costs
and disbursements to neither party May 1,
petition for rehearing denied May 30, 1979

MITCHELL, *Appellant,*
*v.*
CHERNECKI, et al, *Respondents.*
(No. TC 77-0548, SC 25587)
593 P2d 1163

David B. Williams, of Robinnette & Cleveland,
Eugene, argued the cause and filed briefs for appel-
lant.

Robert A. Smejkal, Eugene, argued the cause for respondents. On the brief was Larry J. Anderson, Eugene.

Before Denecke, Chief Justice, and Howell, Lent and Linde, Justices.

LENT, J.

## LENT, J.

In this suit plaintiff seeks to reform a land sale contract and appeals from a decree in favor of defendants. The trial court found there was no antecedent agreement to which the written contract could be reformed. We affirm the result.

The essential facts are not in dispute. Where there may be dispute, we find the facts by trying the case "anew upon the record." ORS 19.125(3).

On August 1, 1974, defendants purchased property within the boundaries of the City of Eugene for $27,000. Approximately two weeks later defendants sold the property to plaintiff for $47,500.

At the time defendants purchased the property, it contained a two-story residence at the front of the property, and a detached building at the rear of the lot. The rear building consisted of a one-bedroom, one-kitchen living unit and a three-car garage.

Shortly after defendants purchased the property, they commenced remodeling the detached building, intending to convert it for residential rental purposes. The remodeling was in progress when plaintiff viewed the property, and was not completed until after the contract of sale was executed. Defendants spent approximately $6,000 on this remodeling project, transforming the rear structure into a unit containing four bedrooms with separate locks and a common kitchen and bathroom. When defendants sold the property to plaintiff, they knew that plaintiff intended to use the property as "income property" and not as a residence for plaintiff. After the contract was executed and construction on the back building completed, defendants acted as rental agents for plaintiff, finding tenants for both the front and rear buildings.

In February or March of 1975, plaintiff heard rumors that the remodeling may have been completed without building permits. When he contacted defendants regarding this disquieting news, he was assured

that there was no problem and that the necessary papers would be forthcoming. Plaintiff did not receive further word from defendants, and in April, 1976, the City of Eugene notified plaintiff that the rear building had been remodeled without the required permits and must be restored to its original condition. Plaintiff also learned that the lot was zoned as a single-family residential area, and, therefore, that his use of two structures for separate rental purposes would be violative of the zoning ordinance.

The written land sale contract between plaintiff and defendants contains only a lot and block description of the parcel of property involved and does not describe any structures as part of the sale. Plaintiff now contends that either because of mutual mistake or mistake on his part accompanied by inequitable conduct on the part of defendants, that instrument does not reflect the true agreement of the parties. He argues that the agreement was for the purchase of a parcel of property with two structures on it, each suitable for residential rental purposes. He asks that the written contract be reformed to conform with that agreement, that it be decreed that defendants cannot perform that agreement and that defendants pay damages for its breach.

Plaintiff relies chiefly upon *Webb v. Culver*, 265 Or 467, 509 P2d 1173 (1973). There we granted the equitable relief of reformation where the seller had led the buyer mistakenly to believe that the buyer was acquiring more property than was described in the contract. We said:

> "Plaintiffs were misled by Culver's conduct in constructing the fence, and in developing other parts of the property in such a way as to make it appear that the fence marked the true line. This conduct can be looked upon as an implied representation by Culver that he was selling all of the land encompassed by the fence. It would be inequitable to permit him now to assert that the boundary described in the contract was controlling." 265 Or at 470.

[288]

In *Webb* the only misrepresentation by conduct was as to a pure question of fact; i.e., the amount of property that was included in the sale. Assuming, for the sake of argument, that defendants in this case were not laboring under the same mistake as was the plaintiff, and that defendants' conduct amounted to a misrepresentation, we note that the representation goes to the use to which the property may legally be put. It is not clear at all whether such a misrepresentation is one of law, of fact, or one of mixed law and fact. Compare, however, *Gamble et ux v. Beahm*, 198 Or 537, 257 P2d 882 (1953). We do not believe that the result of this case should turn on selection of one of those categories to characterize defendants' conduct. As will be discussed later herein we choose to dispose of this case upon our selection of policy to be applied in a case where one seeks to have a court of equity reform his lawful contract to one which is unlawful.

■ It is the settled rule that a party requesting reformation must prove the existence of an antecedent agreement to which the erroneous subsequent instrument should be made to conform. *Frick v. Hoag*, 277 Or 135, 559 P2d 879 (1977); *Mayer/Kleinknecht v. Bassett*, 263 Or 334, 501 P2d 782 (1972); *Manning Lumber Co. v. Voget*, 188 Or 486, 216 P2d 674 (1950). Once such agreement is proved, equity may give it effect by making the instrument express correctly the real agreement between the parties.

The trial court disposed of the case by finding the evidence to be insufficient to establish the antecedent agreement for which plaintiff contended. Although the letter opinion is not found in the trial court file, the court apparently issued a letter opinion which we quote from plaintiff's Abstract of Record:

"The Court has reviewed the memoranda which were submitted by counsel and considered the views expressed during the recent oral argument. With respect to the plaintiff's first cause of suit, the Court does not regard reformation as a proper remedy in this case. The Court is not persuaded that the parties

reached a definite agreement that the property in question would contain two structures, each suitable as a residential rental unit. The absence of an antecedent agreement on thispoint [sic] precludes the Court from reforming the contract under any of the alternative legal theories advanced by the plaintiff.

"The Court is aware of the misleading physical condition of the property at the time of sale. It is apparent that one or both of the parties mistakenly assumed that the properly [sic] [property] legally could contain two rental units. Rescission rather than reformation is the proper remedy for a contract induced by an erroneous factual assumption which is not integrated into the agreement of the parties. The contract as written accurately reflects the agreement of the parties and must be enforced."

We reach the same result in the denial of reformation but by a different route. For the purpose of disposition of this case we shall assume that there was such an antecedent agreement as plaintiff alleges, but as a matter of policy we find it improper to grant the equitable relief plaintiff seeks.

Over fifty years ago the Supreme Court of Illinois reached a similar result. In *C. D. Gammon Co. v. Standard Trust & Savings Bank*, 327 Ill 489, 158 NE 810 (1927), plaintiff sought specific performance of defendant's contract to erect a stable for seventy horses and to lease the stable to plaintiff. An applicable zoning ordinance did not permit the erection of a stable for more than eight horses. The court said:

"* * * The contract called for the construction of a building on the premises which violated the zoning ordinance. Both parties *must be presumed to have known of the existence of the ordinance. Mason v. City of Shawneetown*, 77 Ill 533; *Mather v. City of Ottawa*, 114 Ill 659, 3 NE 216; *Hope v. City of Alton*, 214 Ill 102, 73 NE 406. * * *

"* * * * *

"[Plaintiff] must be presumed to have known * * * [that the contract when made] was in violation of the

zoning ordinance. * * *" (emphasis added) 158 NE at 812, 813.[1]

The court held that the contract called for an "unlawful structure" and, therefore, there was not a "legal contract." The court accordingly refused the equitable remedy of specific performance.

■   Given the proliferation of zoning ordinances in the half century since *C. D. Gammon Co. v. Standard Trust & Savings Bank, supra*, and the public policy of this state encouraging land use planning at all levels of government, we believe that the better course of the law is to hold that purchaser of real property who seeks to enforce[2] his contract of purchase on the equity

---

[1] Other cases may be found that hold that the owner or purchaser of real property is charged with knowledge of zoning ordinance restrictions upon that property. *See, for example, Bluhm v. City of Chicago*, 110 Ill App 2d 136, 249 NE2d 108, 113 (1969) holding that a purchaser is charged with the knowledge of the classification of zoned property; *Reskin v. City of Northlake*, 55 Ill App 2d 184, 204 NE2d 600, 603 (1965) holding that the purchaser is "considered" to have knowledge of the zoning; *Sylvester v. Zoning Bd. of Adjustment of Pittsburgh*, 398 Pa 216, 157 A2d 174, 177 (1960) saying "When [plaintiffs] purchased both tracts of land, they were held to knowledge of the zoning regulations and restrictions applicable to such land."; *Brooks v. City of Memphis*, 192 Tenn 371, 241 SW2d 432, 434 (1951) holding every property owner is "charged with notice" of the zoning ordinances; *Lumund v. Board of Adjustment*, 4 NJ 577, 73 A2d 545, 547 (1950) holding that a purchaser is "presumed" to have knowledge of any zoning ordinance affecting that property; *In re Pierce's Appeal*, 347 P2d 790, 793 (Okla 1959) found that even where it is clear that the property owner has no actual knowledge, he is chargeable, relying upon the authority of *City of Idaho Falls v. Grimmett*, 63 Idaho 90, 117 P2d 461, 464 (1941) where the court held that a property owner was "chargeable" with knowledge of the zoning ordinance restrictions and of the want of authority of city officers and agents to disobey or disregard the ordinance.

[2] This case is not concerned with the situation in which a vendee who has no actual knowledge of the applicable zoning restrictions seeks to *avoid* the contract rather than to enforce it. *Compare Slocum v. Leffler*, 272 Or 700, 538 P2d 906 (1975). *See, also, Gamble et ux v. Beahm*, 198 Or 537, 257 P2d 882 (1953).

Neither do we here deal with the case of a vendor attempting to avoid the consequences of his misrepresentation by asserting the vendee's negligence in not ascertaining the true facts.

Moreover, by nothing held in this case do we mean to preclude consideration of want of actual knowledge as a factor to be considered in deciding whether to grant a variance for hardship.

side of the court is charged with notice of zoning laws which affect that property.[3]

■ Plaintiff here asks this court of equity to reform a contract perfectly legal on its face to an antecedent contract for the purchase of a parcel of real property with an unlawful structure on it, to decree the unlawfulness of the reformed contract and to award him damages for breach of his unlawful contract. Equity should not and will not do so.

Affirmed with costs to neither party.

---

[3] We deliberately refuse merely to declare a presumption that the owner or purchaser has knowledge of applicable zoning restrictions, for the presumption would necessarily be disputable only, ORS 41.350, and our holding would have little efficacy.

"Ignorance of the law excuses no man; not that all men know the law, but because 'tis an excuse every man will plead, and no man can tell how to confute him." John Selden, *Table Talk*, "Law."