Argued and submitted January 24, reversed and remanded May 1, 1984

OGAN et al,
*Petitioners on review,*

*v.*

ELLISON et ux,
*Respondents on review.*

(132318; CA A25964; SC 29986)

682 P2d 760

Donald M. Kelley, Silverton, argued the cause for petitioners on review. With him on the petition and brief was Kelley & Kelley, Silverton.

Richard H. Allen, Salem, argued the cause and filed the brief for respondents on review.

JONES, J.

### JONES, J.

In this civil action for damages, plaintiffs alleged breach of contract and fraud in the conveyance of two "parcels"[1] of real property. They alleged that defendants owned contiguous units of land A and B, and that defendants deeded unit A to plaintiffs in October, 1976, and deeded unit B to plaintiffs in September, 1978. There was a house on each unit of land sold. Plaintiffs claimed that in each of the two sales defendants "impliedly represented" that the land was partitioned in accordance with the land use laws. The units of land were not legally partitioned. Plaintiffs claimed that as a result of this breach they were damaged with respect to each unit of land. Plaintiffs also claimed that defendants had fraudulently misrepresented that each unit of land had been partitioned prior to its sale.

The trial court granted summary judgment for defendants, indicating that no genuine issue of material fact existed. The Court of Appeals affirmed, 64 Or App 411, 668 P2d 470 (1983), holding there was no implied promise in contract and no implied misrepresentation in fraud to support plaintiffs' claims.

Plaintiffs argue that the apparent purpose for the transactions between plaintiffs and defendants was to convey two legally partitioned units of land. Plaintiffs contend that the existence of a lawful partition was of the essence in these transactions.

The partitioning statute effective at the time of the first sale in 1976, prohibited the sale or agreement to sell a parcel without appropriate partitioning approval by local authorities. By the time of the second sale in 1978, the statute prohibited only the sale of a parcel without such approval. The statute, ORS 92.016(2), with the 1977 deletions bracketed, provided:

> "A person may [offer or] negotiate to sell any parcel in a major partition or in a minor partition with respect to which approval of a tentative plan is required by any ordinance or regulation adopted under ORS 92.044 or 92.046, respectively,

---

[1] Because the word "parcel" has specific statutory meaning, which meaning is important in this case, we generally shall refer to the real property involved herein by the more generic term "unit of land."

prior to the approval of the tentative plan for the major or minor partition; but *no person may [dispose of, transfer, sell or agree to] sell any parcel in a major partition or in a minor partition for which approval of a tentative plan is required by any ordinance or regulation adopted under ORS 92.044 or 92.046, respectively, prior to such approval.*" (Emphasis added.) Or Laws 1977, ch 809, § 5.

Thus, as to both sales in this case, the Oregon legislature had required vendors to obtain approval of a tentative plan for partitioning the land prior to its sale, ORS 92.016(2), and provided penalties for failure to do so, ORS 92.990(1).[2] Technically, it could be argued that defendants did not convey "parcels of land" to plaintiffs in the two transactions because they were not "parcels of land" as defined in ORS 92.010(6). That statute defines a parcel of land as "a unit of land that is created by a partitioning of land." The prohibition in ORS 92.016(2), in light of the above definition, provided that the vendor could not sell a unit of land which had been divided into two parts without approval of a tentative plan. In any event, defendants admit that the conveyances were not of lawfully partitioned land.

The 1976 transaction was an attempt to convey a unit of land which was being divided from a larger tract and which had been under single ownership. This conveyance required approval by local authorities under ORS 92.046.[3] The 1978 transaction conveyed the adjoining unit of land so that plaintiffs had two houses on one non-partitioned unit of land instead of two houses on separate parcels of land. Plaintiffs claim what they received legally appears as one unit as follows:

---

[2] ORS 92.990(1) states:

"Violation of any provision of ORS 92.010 to 92.090, 92.100 and 92.110 to 92.170 or of any regulation or ordinance adopted thereunder, is punishable, upon conviction, by a fine of not less than $50 nor more than $500 or imprisonment in the county jail for not less than 25 days nor more than 50 days, or both."

[3] The complaint does not allege the plaintiffs presented any Marion County land use ordinance(s) applicable to the transactions. In further proceedings, it will be necessary for plaintiffs to prove that applicable local ordinances were in effect at the times of the sales.

when it should legally appear as two parcels as follows:

Plaintiffs claim that the defendants, as owners of the property, were charged with knowing that the property was not legally partitioned and therefore impliedly misrepresented the property as partitioned property when they conveyed the property to the plaintiffs who were unaware of the lack of partitioning and believed they had purchased partitioned parcels of land. Plaintiffs, who wish to affirm the conveyances, rather than to rescind on grounds of illegality, sue for damages based on the difference in value of the property as non-partitioned units of land versus the value of the property had it been legally partitioned into two separate parcels.

The Court of Appeals held that the transactions did not "as a matter of law give rise to an implied promise that the land was sold in conformity with the partition laws," 64 Or App at 416-17, relying in part on *Mitchell v. Chernecki,* 286 Or 285, 593 P2d 1163 (1979). In *Mitchell,* we held that a purchaser of real property who seeks to enforce a contract of purchase in equity is charged with notice of zoning laws which affect that property. This case is different from *Mitchell* because the zoning problem in that case involved only a single inquiry to determine the use to which the property could be put; it did not concern a direct violation of a statute by the seller. To

uncover that fact would have required a complex search for which buyers should not be held responsible.

■        Defendants contend that ORS 93.140 eliminates any implied representation that the property was partitioned. It provides:

> "No covenant shall be implied in any conveyance of real estate, whether it contains special covenants or not, except as provided by ORS 93.850 to 93.870."

However, this statute has been interpreted to restrict the implication of covenants of title, not representations in general. *Yepsen v. Burgess,* 269 Or 635, 638-39, 525 P2d 1019 (1974). ORS 93.140 does not prohibit recognition of an implied representation in the instant case. In this case, we are not concerned with a "covenant" in a deed; we are addressing an implied representation arising from a contract to convey real estate by deed.

A case similar to the present one is *Bronson v. Moonen,* 270 Or 469, 528 P2d 82 (1974). In *Bronson,* the vendors in a land sale contract failed to comply with an administrative rule of the Health Division of the Oregon Department of Human Resources whereby the vendors were required to ask for a feasibility study which would have informed them that they could not install a septic tank on a lot they sold to purchasers. The Bronsons, as sellers, were required to propose to the local health officer in writing a method for providing the property with sewage disposal. Upon receiving this proposal, the health officer would have considered its feasibility. His findings would have been returned to the Bronsons who, in turn, were required to deliver a copy of the findings to the purchasers who at that time would have discovered the land's unsuitability. The court said that the vendors' failure to comply with the rule rendered the contract between vendor and purchaser voidable as per the purchasers' request for relief. 270 Or at 479. In the present case, defendants failed to follow prescribed county rules for the partitioning of property prior to sale. In *Bronson,* a full knowledge of health department rules would not have protected the purchasers from the failure of the sellers of real property to have the required testing done. In the present case, a full knowledge of the partitioning laws would not have protected plaintiffs from defendants' misrepresentations concerning the ability of

defendants to sell parcels as separate and distinct. Plaintiffs would not have known that defendants failed to have the parcels legally partitioned prior to sale.

■     A threshold question is whether the prohibition contained in ORS 92.016(2) renders defendants' promise to convey in each of the two sales unenforceable by either party or just unenforceable by the seller. We conclude that the seller of an unpartitioned unit of land who conceals the lack of partitioning from the purchaser cannot enforce such an illegal conveyance, but that the purchaser who is unaware of the lack of partitioning has several options. The purchaser may, upon discovery of the illegality, (1) sue for rescission and be placed in status quo, *Heverly v. Kirkendall,* 257 Or 232, 235, 478 P2d 381 (1970), (2) rescind the contract absolutely and sue for any moneys paid for the purchase of land, *Kruse v. Bush,* 85 Or 394, 397, 167 P 308 (1917), (3) affirm the transaction and sue for breach of contract, *Nisson v. Tillman,* 213 Or 133, 139, 323 P2d 329 (1958), or (4) affirm the transaction and maintain an action for fraud, *Musgrave v. Lucas,* 193 Or 401, 238 P2d 780 (1951).

In *Uhlmann v. Kin Daw,* 97 Or 681, 689-90, 193 P 435 (1920), this court stated:

> "The rule that an agreement is illegal and unenforceable if it conflicts with the provisions of a statute is not inexorable and unbending. If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be inferred, then an agreement which conflicts with the statute is void. However, upon finding a statute with either a penalty or a prohibition, or both, the court is not immediately debarred from further prosecuting an inquiry as to whether an agreement is void and unenforceable in a court of justice [citations omitted]. The inquiry is as to the legislative intent, and that may be ascertained, not only by an examination of the express terms of the statute, but it may also be implied from the several provisions of the enactment. Of course, if a statute expressly declares that an agreement made in contravention of it is void, then the inquiry is at an end; but, in the absence of such a declaration, the court may take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy, and the effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the

> legislative intent to make such agreements void; and if from all these considerations it is manifest that the lawmakers had no such intention, the agreements should be held to be legal contracts and enforceable as such [citations omitted]. * * *"

The plaintiffs in *Uhlmann* were prohibited by statute from transacting business under an assumed name because they had not filed a certificate with the county establishing the assumed name. The statute provided a penalty. The court determined that the statute was not intended to prevent business transactions, but rather to enforce the certification process of persons doing business under an assumed name. 97 Or at 692. This court determined that by its terms the statute did not support a finding that contracts violative of the statute should not be enforced. *Uhlmann,* therefore, held that the plaintiffs' loan agreement with the defendant, made under the assumed name prior to filing the above-mentioned certificate, was enforceable by the plaintiffs.

The most important factors in determining the enforceability of a promise which is violative of a statute are the intent of the legislature and the public policy furthered by the statute. In some instances, these factors are evident. For example, courts would refuse to enforce contractual promises to murder or to pay for a murder. But, in cases such as *Uhlmann* and the instant case, a closer examination of the statute and the policy behind it is necessary to determine whether the legislature intended promises violative of that statute to be unenforceable by either party.

The instant statute, ORS 92.016(2), prohibits the sale of a parcel prior to the approval of a tentative plan for partitioning required by an ordinance or regulation adopted pursuant to ORS 92.044 or 92.046. Those two statutes empower counties and cities to enact regulations or ordinances prescribing the conditions under which plans for partitioning will be approved. The purposes of these two statutes are numerous, but all relate to providing counties and cities with effective tools for the prevention of undesirable partitioning of land. Within the statutory scheme of which ORS 92.016 is a part, we perceive a legislative intent that promises which are violative of ORS 92.016 should be enforced against sellers of property, but not cut off legal remedies of unsuspecting purchasers of property. Pursuant to

the the basic rule in *Uhlmann,* therefore, we hold that a contractual promise to convey land which violates ORS 92.016 is unenforceable by the seller against the purchaser of property, but enforceable by the purchaser against the seller of the property if the purchaser can otherwise prove a breach of the contract, to wit, that the land sold was unpartitioned property and damages were caused by the breach of the implied promise of lawful partitioning.[4]

Plaintiffs also alleged two counts of fraud as follows:

"X

"In selling the above mentioned parcel of real property to Plaintiffs, Defendants impliedly represented that said parcel was a separate and distinct parcel and in conformity with any and all applicable land use laws, regulations, and rules.

"XI

"Said representation by Defendants was material and was false.

"XII

"Defendants knew that said representation was false, or made said representation recklessly and without knowledge of its truth or falsity.

"XIII

"Defendants intended that said representation be acted upon by Plaintiffs, and in reliance on the truth of said representation, Plaintiffs did act upon said representation in the manner contemplated.

"XIV

"Plaintiffs had a right to rely on said representation."

---

[4] The legislature, in 1983, enacted ORS 92.018, which states:

"A person who buys a lot or parcel that was created without approval of the appropriate city or county authority may bring an individual action against the seller in an appropriate court to recover damages or to obtain equitable relief. The court may award, in addition to the remedies provided in this section, both reasonable attorney fees and costs incurred on trial and on appeal."

This statute applies to sales of land made after its enactment and therefore does not apply to either of the sales in the instant case. A sale of land in 1984 prohibited by ORS 92.016 would be enforceable by the purchaser because the statutory scheme now includes ORS 92.018. This statute demonstrates a legislative intent absent in the pre-1983 chapter 92.

The plaintiffs then alleged that they were unaware of the falsity of the defendants' representation and sought general and punitive damages arising from each sale.

■        Although not specifically pled, the thrust of these pleadings is that plaintiffs allege the sellers knew the property was not partitioned and concealed that fact from the purchasers. Of course, a trial on the merits will be required to determine if those allegations are true. "Actionable fraud may be committed by a concealment of material facts as well as by affirmative and positive misrepresentations." *Musgrave v. Lucas, supra,* 193 Or at 410. In this case, allegations that the sellers sold the property to the purchasers knowing that the property was not partitioned, but not expressly representing that the property was partitioned, constitutes a sufficient allegation of a fraudulent misrepresentation even though the misrepresentation is only implied.

In *Millikin v. Green,* 283 Or 283, 285, 583 P2d 548 (1978), the sellers of property did not expressly represent that a roof of a newly built dwelling was in good condition, but concealed the fact that the roof was in faulty condition. We held consistent with *Musgrave* that "[c]oncealment of a known fact that is material to the transaction amounts to actionable fraud."

In *Heverly v. Kirkendall,* 257 Or 232, 234, 478 P2d 381 (1970), the court noted in that rescission case that there was no evidence that the sellers expressly represented the location of a boundary line, but the fact that a garage on the premises extended four feet beyond the actual boundary created an implied representation. *See also Gill v. Marquoit,* 269 Or 581, 525 P2d 1030 (1974).

■        We conclude that the plaintiffs' pleadings are sufficient to support claims for breach of contract and fraud. Because genuine issues of material fact exist, the trial court should not have granted summary judgment.

On the issue of damages, even though plaintiffs now own the two portions of adjacent real property, the property was not legally partitioned when sold. Plaintiffs still may suffer damages. They have alleged that the real market value of the property was less than they paid for the property because of the breach of contract and the fraud described in

their complaint. Such damage is a matter for proof at trial. Further, whether punitive damages are recoverable will depend upon facts brought out at trial.

As to defendants' contention that the statute of limitations has run, in an action based on breach of contract the statute of limitations is six years. ORS 12.080. The contract claims were brought within that time. As to the claims based on fraud, the statute of limitations of two years commences from the date of the discovery of the fraud. ORS 12.110; *Carey v. Hays,* 248 Or 444, 450, 434 P2d 331, (1967). The date of the discovery of the fraud is a disputed fact to be resolved by the trier of fact.

The Court of Appeals is reversed and the case is remanded to the trial court for further proceedings.