Argued July 8, reversed and remanded November 21, petition
for rehearing denied December 17, 1974

## BRONSON ET UX, *Respondents, v.*
## MOONEN ET UX, *Appellants.*
### 528 P2d 82

*Charles M. Gudger, III,* Eugene, argued the cause for appellants. With him on the briefs were Bick, Monte & Joseph.

*S. Sidney Armstrong* of Nicholson & Armstrong, Florence, argued the cause and filed a brief for respondents.

McALLISTER, J.

The Bronsons filed this suit praying for strict foreclosure of a contract of sale of a building lot to the defendants, the Moonens. The Moonens filed a cross-complaint praying for a rescission of the contract and restoration of the amounts paid thereunder. The trial court entered a decree providing that unless the defendants, within thirty days from the date of the decree, paid the balance due on the contract of $2,737.50 plus interest, attorney fees of $500 and costs, the contract and all interest of the defendants in the prop-

erty would be strictly foreclosed. The defendants appeal, contending that the court erred in denying their right to rescind.

Although this appears to be a grudge battle, there is no dispute about the facts. The appellants' brief contains a statement of the controlling facts which is not challenged by respondents. The Bronsons owned Lot 3, Block 2, First Addition to Tsiltcoos Heights located about seven miles south of Florence in Lane County. The 100 x 150 foot lot was unimproved and the Bronsons had put a FOR SALE sign on the property including their telephone number.

The Moonens lived in Tsiltcoos Heights and their home was across the street from the Bronsons' vacant lot. The Moonens had purchased two other lots in Tsiltcoos Heights. We quote from Mrs. Moonen's testimony as follows:

"Q How many lots in Tsiltcoos Heights had you purchased?

"A I have one. We live there ourselves. We bought that one. And then we have another one that we built a house on a year ago, and then we have another one down on Hilltop Drive.

"Q How long have you lived in Tsiltcoos Heights?

"A About two and a half years."

In the spring of 1972 Mrs. Moonen called the number on the for sale sign and talked to Mrs. Bronson about buying the lot. Mrs. Bronson said the price of the lot was $4,000 and Mrs. Moonen said she would talk to her husband and let Mrs. Bronson know if they were

interested. Sometime later the Moonens decided to buy the lot. Mrs. Moonen called Mrs. Bronson, and after some unsuccessful bargaining over the price Mrs. Moonen told Mrs. Bronson that the Moonens would buy the lot. The parties signed a contract on a Stevens-Ness Form #706 for the sum of $4,000, with $1,000 paid down and the balance payable in instalments of not less than $50 per month plus interest. The contract was negotiated, signed and delivered by telephone and mail through the office of the Bronsons' attorney and the parties met for the first time when this case was tried in the court below.

In November the Moonens were ready to start building a house on the lot which they had purchased from the Bronsons. Mrs. Moonen applied for a building permit and a permit to use an Individual Sewage Disposal System, which we will refer to as a septic tank. In response the Moonens first received a communication from the Lane County Health Department dated November 10, signed by Geo. Brasells, Sanitarian, containing the following notation, which in pertinent part read as follows:

"This site cannot be approved at this time due to the following:

"The Tsiltcoos Heights Public Water System at this time is not an approved system as approved by the State Health Division. Those sites which do not have an acceptable public water supply must meet the minimum requirements of one acre in size. Soil conditions on the site appear suitable for subsurface sewage disposal."

Later the Moonens received from the Lane County Department of Health and Sanitation a "Notice of

Denial of Property for Individual Sewage Disposal Use" giving as the reason as follows:

## "NOTICE OF DENIAL OF PROPERTY FOR INDIVIDUAL SEWAGE DISPOSAL USE

November 21, 1972
　　Date

Vera-Francis Moonen
　　Applicant

19-12-26.2 Tax Lot 133
Property Description

Reason for denial　Water System not Approved.

Notice of this denial was given to Vera-Francis Moonen on 11-21-72 by certified mail. A copy of temporary
　　Date
rule (a part of O.A.R., Chapter 333, Sections 41-001 to 41-045) was included with this notice advising the applicant of his right to a hearing.

LANE COUNTY DEPARTMENT OF HEALTH
AND SANITATION
Building and Sanitation Division

　　R. Swenson　　　　　11-21-72
　　Signature　　G.B.　　　　Date "

On December 26th the Moonens' attorneys wrote to the Bronsons advising them of the denial of their request to use a septic tank and requested the Bronsons to "solve the problem". The Bronsons' attorney responded with a refusal to take any action and a demand for the payment of the purchase price as agreed in the contract. On January 19 the Moonens' attorneys replied by letter, in effect rescinding the contract, tendering a deed to the Bronsons and demanding a return of the amounts paid on the purchase price.

It appears that the only water supply for Tsiltcoos Heights about which there is any evidence was owned by the subdivider, named LaForge, who supplied water to homes built in his subdivision from a well. According to Mrs. Moonen there were about 200 lots in the subdivision and 50 homes had been built in that area generally known as Dunes City, but she did not testify as to the number of homes built in the First Addition to Tsiltcoos Heights or how many homes were being supplied with water by the LaForge water system.

The only alleged misrepresentation claimed by the Moonens was a statement which Mrs. Moonen testified was made by Mrs. Bronson during their first telephone conversation. Mrs. Moonen testified:

> "A Well, they had a sign on their lot and I called and talked to Mrs. Bronson about buying the lot and did she want cash, and she said not, she would sell it on a contract with a thousand dollars down and $50 a month plus interest. And so we said—I talked to my husband about it and it was a real nice lot. And some of the lots that were sold out there was stipulated in them that water was included in the lot for building. And I asked her if it was in her deed and she said, well, she didn't know because she hadn't looked at it but *we'd have no problem with the water*. Because we were very careful about this." (Emphasis supplied.)

The Moonens contend that the court erred in denying their right to rescind the contract because of the failure of the Bronsons to comply with an administrative rule in effect at the time of sale which was promulgated by the Health Division of the Department of Human Resources (OAR Ch 333, #41-022, filed April 21, 1972, HD 14, effective May 1, 1972). The pertinent portions of that rule read as follows:

> "(2) *No person shall transfer, sell, lease or*

*otherwise dispose of any lot or parcel of land within the State of Oregon for valuable consideration, or agree in writing to do so* (except when such written agreement states that the completion of the transfer, sale, lease or other disposition is contingent upon compliance with the remainder of this sub-section), *without first having received from the proposed transferee a written statement which either (a) sets forth the transferee's intended use of the property or (b) states that the intended use is not known or (c) states that the transferee declines to disclose the intended use. If the use or uses set forth in the written statement include residential,* camping, or commercial uses other than agricultural uses or the growing of trees, *and such use is other than the use to which the property is put at the time of the statement, the transferor shall provide to the transferee a copy of the statement by the local health officer required by subsection (3) of this section.* The statement of the proposed transferee required under this subsection shall be retained by the transferor.

"(3) *If the use or uses set forth in the written statement of the* subdivider, partitioner, or *proposed transferee include residential, camping, or commercial uses* other than agricultural uses or the growing of trees, *and such use is other than the use to which the property is put at the time of the statement,* the subdivider, partitioner, or *transferor shall propose to the local health officer in writing a method for providing such property with sewage disposal and domestic water.* If the local health officer finds that the proposed method for the disposal of sewage is by other than subsurface means, he shall deliver a statement to that effect to the subdivider, partitioner, or transferor. If the local health officer finds that the proposed method for sewage disposal is by subsurface means he shall determine the feasibility of the proposed method for disposal with respect to the property in question, and shall deliver a statement in writing to the

subdivider, partitioner, or transferor stating whether or not such subsurface disposal means are feasible. Written approvals by local health officers prior to the effective date of this rule shall be deemed to be a statement of feasibility under this rule." (Emphasis supplied.)

It was stipulated that the above rule was in effect in Lane County when the contract of sale dated May 17, 1972 was executed, although both Mrs. Bronson and Mrs. Moonen testified they knew nothing about the rule when the parties entered into the contract of May 17, 1972. In any event, it is agreed that no effort was made by the Bronsons or the Moonens to comply with the rule.

■ We agree with the trial court that there is no merit in the defenses based on an innocent misrepresentation of a material fact and we do not reach the contention based on a mutual mistake of a material fact. We find, however, that the Moonens are entitled to rescind because of the Bronsons' failure to comply with the Administrative Rule quoted above. If the Bronsons had complied with the rule and asked for a feasibility study as required by section 3 of the rule they would have been informed that they could not install a septic tank because the Tsiltcoos Heights public water system was "not approved". It is obvious that if the Moonens had known that they could not install a septic tank they would not have bought the lot.

■ Administrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute. *U.P.R.R. Co. v. Tax Commission,* 240 Or 628, 402 P2d 519 (1965); *Arnold v. Gardiner Hill Timber, Co.,* 199 Or 517, 523, 263 P2d 403 (1953); *State ex*

*rel Kaser v. Leonard,* 164 Or 579, 606, 94 P2d 1113, 102 P2d 197, 129 ALR 1125 (1940); 2 Am Jur 2d 119, Administrative Law § 292. This principle applies with equal effect to the rules and regulations promulgated by the Health Division which existed at the time of this transaction. ORS 431.140 (1) provides:

> "All rules and regulations made [by the Health Division] pursuant to ORS 431.130 shall be binding upon all county and municipal health officers and other persons affected by the statutes listed in ORS 431.130 and shall have the force and effect of law."

If the Administrative Rule, #41-022, has the force and effect of law, the only question is whether the plaintiffs complied with the requirements of the rule.

The Bronsons contend that they did not violate the rule because the Moonens' intended use of the property was the same as "the use to which the property" was being put at the time the contract was executed.

We find that the use to which the Moonens intended to put Lot 3 was different than the existing use which the Bronsons were making of the property when it was sold. The Bronsons were holding the property for sale, whereas the Moonens purchased the property with the intent to construct a house thereon and to sell the house and lot when the house was completed. The record does not indicate whether the Bronsons bought the property as a homesite for themselves or for investment for resale at a later date.

While there was conflicting evidence as to whether the Moonens indicated what their intended use of the property would be, the Bronsons, as sellers, were under an affirmative duty to obtain a written statement setting forth the Moonens' intended use. Upon

receiving such a statement they would have discovered that the Moonens' intended use was for residential purposes and, as such, was other than the actual use to which the property was put at the time the written statement should have been procured. This being the case, the Bronsons, as sellers, were required under subsection (3) of the rule to propose to the local health officer in writing a method for providing the property with sewage disposal and domestic water. Upon receiving this proposal the local health officer, applying Health Division standards, would have considered the feasibility of the sellers' proposed method of sewage. His findings would then have been returned to the Bronsons, who, in turn, pursuant to subsection (2), were required to deliver a copy of the local health officer's findings to the Moonens. At that time the Moonens would have discovered the land's unsuitability for their intended purpose.

■ As a general rule an agreement made in violation of a statute is void, but the rule is not "inexorable and unbending". We quote from the leading case of *Uhlmann v. Kin Daw,* 97 Or 681, 689, 193 P 435 (1920), as follows:

"* * * An agreement is illegal if it is contrary to law, morality or public policy: 6 R.C.L. 693. Plain examples of illegality are found in agreements made in violation of some statute; and, stating the rule broadly, an agreement is illegal if it violates a statute or cannot be performed without violating a statute.

"Statutes present themselves in various forms. Some contain a provision expressly prohibiting an act, without also expressing a penalty for the doing of the prohibited act. Others express a penalty and also in terms express a prohibition. Some prescribe a penalty only, and do not in terms ex-

press a prohibition; and in that case a prohibition may be implied, and if a prohibition is implied it is as effective as an express prohibition.

"The rule that an agreement is illegal and unenforceable if it conflicts with the provisions of a statute is not inexorable and unbending. If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be inferred, then an agreement which conflicts with the statute is void. However, upon finding a statute with either a penalty or a prohibition, or both, the court is not immediately debarred from further prosecuting an inquiry as to whether an agreement is void and unenforceable in a court of justice * * *."

The holding in *Uhlmann v. Kin Daw*, supra, was summarized in *Hunter v. Cunning*, 176 Or 250, 287, 154 P2d 562, 157 P2d 510 (1945), as follows:

"* * * We derived therefrom the fundamental distinction between the Uhlmann case and the case at bar, viz., that the rule, which avoids a contract made in contravention of a statute, will *always* be applied when the statute is intended for the protection of the public against those evils which we know from experience society must be guarded against by protective legislation. The statute under consideration is such a one."

There is no need in this case to pause and determine whether the contract of sale is void or voidable.[1] It was at least voidable.

---

[1] The following cases hold that a contract made in violation of a statute enacted "for the protection of the public" is void. Schramm v. Bank of California, 143 Or 546, 574-575, 20 P2d 1093, 23 P2d 327 (1933); Pennicard v. Coe, 124 Or 423, 434, 263 P 920 (1928); In re Water Rights of Willow Creek, 119 Or 155, 207, 236 P 487, 763, 237 P 682, 239 P 123 (1925); Turney v. J. H. Tillman Co., 112 Or 122, 128, 228 P 933 (1924); Horseman v.

An illustration of the foregoing principle in the context of land sale contracts is *Smith v. Bach,* 183 Cal 259, 191 P 14 (1920). There the vendee sought to recover monies paid under a land sale contract claiming that the contract was invalid due to the vendor's violation of a statute making it unlawful to sell or offer for sale land by reference to an unrecorded map. The statute upon which the vendee relied prescribed the manner in which the contract was to be made and provided only that any violation of its provisions would be deemed a misdemeanor. The Supreme Court of California, in holding that the contract was void, stated:

"For the purpose of ascertaining the legislative intent courts should consider the entire statute, and if from such consideration it is manifest that the Legislature had no intention of declaring a contract void, they should be sustained and enforced; otherwise they should be adjudged void. (Citation omitted.) Here it is manifest from a reading of the entire act that the statute in question was passed for the protection of the public, and not as a revenue measure. (Citation omitted.) In such a case a contract made in violation of its terms should be held to be void. (Citations omitted.) The general rule controlling in cases of this character is that, where a statute prohibits or attaches a penalty to the doing of an act, the act is void, and this, notwithstanding that the statute does not expressly pronounce it so, and it is immaterial whether the thing forbidden is malum in se, or merely malum prohibitum. A statute of this character, prohibiting the making of contracts except in a certain manner, ipso facto makes them void if made in any other way. (Cita-

Horseman, 43 Or 83, 91-92, 72 P 698 (1903); Annotation, Validity of contract in violation of statute imposing criminal sanction but not specifically declaring contract invalid, 55 ALR2d 481, 483-485 (1957); 17 CJS 1002, 1006-1007, Contracts §§ 201-202.

tion omitted.) The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void. * * *" 191 P at 15.

As in *Smith,* the administrative rule in the instant case prohibited the transfer of any land except in a certain manner. It was promulgated for the protection of the public and the legislature had provided that a violation of such a rule would be deemed a misdemeanor (ORS 431.990). Although the Health Division did not specifically state what consequences would attach to a violation of its rule, this question is answered by considering the language of the rule which expressly prohibits any person from effecting a transfer of any land within the State of Oregon without first complying with the Health Division's requirements.

The decree is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion, including rescission of the contract and restoration of the parties to status quo.