Argued July 10, affirmed August 7, 1975

SLOCUM ET UX, *Respondents, v.*
LEFFLER ET UX, *Appellants.*
538 P2d 906

*George H. Layman,* Newberg, argued the cause and filed the briefs for appellants.

*Richard E. Paul,* Portland, argued the cause and filed the brief for respondents.

TONGUE, J.

This is a suit to rescind a contract for the sale of 30 acres of unimproved land in Yamhill County. Plaintiffs, the purchasers, alleged and the trial court found that defendants, the sellers, "represented to plaintiffs that it would be possible to obtain a subsurface sewage disposal permit" from the county, knowing that plaintiffs desired to build a home on the property; that plaintiffs relied on that representation in purchasing the property; and that they were subsequently unable to obtain such a permit. Based upon such findings the trial court entered a decree rescinding the sale. Defendants appeal.

In oral findings at the conclusion of the trial, the trial court also found that there was no fraud or "evidence of recklessness." Upon our review of the record we agree. The trial court found, however, that there were "innocent misrepresentations."

■ Because "innocent misrepresentations" may provide a sufficient basis for the rescission of a land sales contract,[1] the primary question submitted for decision in this case is whether defendants "represented to plaintiffs that it would be possible to obtain a subsur-

---

[1] See *Souza v. Jackson Co. Fed. S. & L.,* 256 Or 220, 224, 472 P2d 272 (1970).

face sewage disposal permit from Yamhill County."[2]
We must determine that question based upon our de
novo review of the entire record and after according
due consideration to the findings by the trial court,
based upon its opportunity to observe the witnesses
and their demeanor.

*The facts.*

In July 1972 plaintiffs, a truck driver and his
wife, were looking for property in Yamhill County
where they could have some livestock and a horse for
their daughter and build a home. They drove by this
property, which looked "ideal" to them, and noticed
a "sign" with defendants' telephone number. Defend-
ant Ernest Leffler had been a farmer in that area
for many years and also had a real estate salesman's
license. Upon receiving a telephone call from plain-
tiffs he then met them and they drove over the prop-
erty together in plaintiffs' four-wheel drive pickup
truck.

During that visit to the property, plaintiffs
were shown "possible locations for homesites." Mrs.
Slocum asked "whether there was a permit or approval
by Sanitation or the county for sanitation because she
had heard that there had been difficulties in that area
pertaining to it" and was told by Mr. Leffler, "Yes, I
have it at home."

Mr. Leffler and the plaintiffs then went to his
home where they discussed the subject of a sewage
disposal permit. At that time he showed plaintiffs
the letter, which was apparently then read by them.
The letter was dated November 11, 1971, and was
signed by Mr. Milton H. Buehler, Senior Sanitarian

---

[2] No contention is made by plaintiffs that this contract may
be rescinded for mutual mistake of the parties, but plaintiffs'
counsel has frankly stated that they must "stand or fall" upon
the contention that there was an "innocent misrepresentation."

of the Yamhill County Health Department, and read as follows:

"Preliminary investigation of the 72 acres of tax lot # 3023-2 located east of M #4 shows that only certain areas are suitable for septic tank systems.

"The enclosed map shows the various soils on this property. CeC and PaD are unsuitable and permits will not be issued on these soils. On WeE and WeF, systems could be installed on slopes of less than 15%, providing the drainfields are 300 feet apart. On WkD and DuC, systems could be installed on slopes of less than 15%, providing the drainfields are 500 feet apart."

According to plaintiffs, when Mr. Leffler brought out the letter he "told us this was what he had, the approval from the county" and that it was a "letter of authority from the county." Plaintiffs also testified that Mr. Leffler "maintained that the letter was approval" and told them that "this letter of approval was sufficient"; and that "there wouldn't be any problem of getting sewage sanitation approval." Plaintiffs said that they "didn't question any more because [they] figured a real estate salesman * * * knows what it's all about."

Defendant Ernest Leffler testified that he told plaintiffs that they must apply for a permit, but did not deny making the statements attributed to him by them.

Plaintiffs also testified that in reliance upon these representations by Mr. Leffler they purchased the property. When, however, they applied for a subsurface sewage disposal permit in May 1973, their application was denied. They testified that they then complained to Mr. Leffler, who expressed surpise and said again that "they had already given approval, that there was a letter issued from their department stat-

ing so." He then delivered to them a copy of the previous letter.

Upon taking that letter to the county health authorities, plaintiffs were told that "there was no value to it." By then Mr. Buehler was no longer Senior Sanitarian for the county and the regulations had been changed. According to the testimony of his successor, however, under both the old and the new regulations there were objective requirements relating to soil types, including subsurface soil, that could not be satisfied by the soil on any portion of the property in question, as demonstrated by test holes at various locations. Apparently no "on site" inspection was made prior to Mr. Buehler's previous letter, but "merely a review of soil theories on a map  *  *  *" which "really doesn't guarantee a thing," according to Mr. Buehler's successor.

During the period in question regulations were also in effect requiring the sellers of property for the purpose of subdivision to obtain a "feasibility report" on such property. Mr. Leffler did not request such a report. He had not, however, offered the property for sale for the purposes of subdivision and denied knowledge of such regulations at the time of this sale.[9]

*There was a misrepresentation of a material fact for which this contract must be rescinded.*

The problems presented by this case may not be typical of the problems arising in this day of ever-increasing and more complex administrative regulations. Unfortunately, such problems do occasionally arise, particularly in the area of land use and real estate transactions.

Based upon our review of the entire record in

---

[9] Cf. *Bronson v. Moonen*, 99 Adv Sh 2592, 270 Or 469, 528 P2d 82 (1974).

this case, we agree with the finding by the trial court that defendants "represented to plaintiffs that it would be possible to obtain a subsurface sewage disposal permit." In fact, it was not possible to do by reason of the objective requirements of then existing sanitary regulations, as applied to the soil of this property.

If, when that subject was discussed, Mr. Leffler had simply produced, without comment, the Buehler letter for examination by plaintiffs a more difficult question might be presented. Under the testimony, however, it appears that Mr. Leffler went further and affirmatively represented to the plaintiffs that this letter was a "letter of approval" or a "letter of authority" which "was sufficient" in and of itself, with the result that "there wouldn't be any problem of getting sewage sanitation approval."

■■ Under these facts we hold that Mr. Leffler did more than to produce a letter from a county official or to express an opinion that it would be possible to get a subsurface sewage disposal permit, but that he made a representation of fact, as a knowledgeable and licensed real estate salesman, upon which the plaintiffs relied and were entitled to rely. See *Lackey v. Ellingsen*, 248 Or 11, 13, 432 P2d 307 (1967); *Sorenson et ux v. Gardner et ux*, 215 Or 255, 261, 334 P2d 471 (1959); *Gamble et ux v. Beahm*, 198 Or 537, 543-44, 257 P2d 882 (1953). See also 12 Williston on Contracts 362, § 1494 (Jaeger 3d ed 1970).

The judgment of the trial court is affirmed.[2]

_____

[2] Defendants also contend that because plaintiffs' complaint alleged that misrepresentations were made intentionally or recklessly, plaintiffs cannot recover for innocent misrepresentations. In a suit in equity for rescission, however, such allegations are surplusage and need not be proved, although required in an action at law for damages for fraud. Thus there was no "failure of proof" in this case, as contended by defendants. No contention is made by defendants that they were misled or otherwise prejudiced by any resulting "variance" between pleading and proof.