Argued at Pendleton May 3, affirmed October 21, 1976

# DIESEL SERVICE UNIT CO., *Respondent,*
*v.*
# BONBRIGHT et ux, *Appellants.*

555 P2d 452

*Leeroy O. Ehlers* of Fabre & Ehlers, Pendleton, argued the cause and filed briefs for appellants.

*Alex M. Byler* of Corey, Byler & Rew, Pendleton, argued the cause and filed a brief for respondent.

Before O'Connell,* Chief Justice, and McAllister Denecke,** Tongue, and Bryson, Justices.

BRYSON, J.

*Chief Justice when the case was argued.
**Chief Justice when the case was decided.

**BRYSON, J.**

Plaintiff brought this suit seeking specific performance of its contract with defendants and praying that defendants be required to (1) construct and operate a truck stop service station on their property adjoining plaintiff's property; (2) complete a restaurant building for operation on its property; and (3) provide plaintiff's property purchased from defendants under the contract with sanitary sewer facilities or pay damages in lieu thereof. The prayer for construction and operation of the restaurant was withdrawn by plaintiff during trial as defendants had proceeded to comply with that portion of the contract. Defendants generally denied and affirmatively answered each of plaintiff's contentions.

The trial court rendered findings of fact and conclusions of law and decreed that defendants (1) immediately construct and open for business a truck stop service station on defendants' property adjoining plaintiff's property; (2) immediately provide plaintiff's real property with adequate sanitary sewer facilities and that plaintiff pay defendants "the hookon and use fee established by the City of Pendleton and defendants"; and (3) "[i]f defendants fail to provide plaintiff's real property with such sanitary sewer facilities by July 1, 1974, plaintiff shall have judgment in its favor and against defendants, and each of them, in the sum of $110,000. Upon payment of such judgment defendant shall be relieved of the duty of providing such sanitary sewer facilities * * *." The defendants appeal.

Defendants owned a 15-acre tract of land located five miles east of Pendleton, Oregon, at the Mission interchange on Highway I-80N. Defendants are jobbers handling Phillips Petroleum Company products in the Pendleton area. As part of that operation several service stations were operated, with one catering to highway truck traffic. During 1970-71, I-80N freeway was constructed east of Pendleton, by-passing that

part of Pendleton where defendants' truck service station was located. Defendants Bonbright purchased the 15-acre tract of land for a proposed complete automobile and truck stop service station. The plans called for a restaurant, motel, service, and sales and repair operation on the property.

Plaintiff operated a Peterbilt sales agency in Portland together with service and repair facilities for all makes of trucks and desired to locate a second sales and service agency in eastern Oregon. It learned of defendants' plans for the new truck service stop and negotiated for the purchase of a portion of defendants' property.

On June 13, 1972, plaintiff and defendants entered into a written contract whereby plaintiff purchased from defendants two of defendants' 15 acres for the sum of $20,000. The contract also provided that the plaintiff would construct a building on the two acres "suitable for a truck sales and repair business"; "that it is a material consideration to the execution of this contract that the commercial development of the Bonbright [defendants'] property proceed as rapidly as possible and in an orderly manner, and with due regard to the rights and interests of other occupants of the said Bonbright development." Plaintiff agreed, as per the contract, that it would "proceed as rapidly as possible in the development of the real property" and "make every reasonable effort to have its business thereon opened and in operation by one year from the date of this contract." The contract further provided, "It is further a material consideration to the execution of this contract that a restaurant and a service station catering to trucks be constructed and operated on the said Bonbright property."

In other words, it was agreed between the parties that the defendants would sell the two acres to the plaintiff and that plaintiff would build and operate a truck sales, service and repair facility; the defendants would build and operate a truck service stop (fuel and

oil) facility. The contract also provided that defendants had a lessee to build and operate a restaurant on the Bonbright premises.

The evidence shows that the construction and operation of the sales, service and repair business by plaintiff, the construction and operation of the truck service station by defendants, and the construction and operation of a restaurant by a suitable lessee were necessary for the success of the project and that all of said representations were material and induced the plaintiff to purchase the two acres and to build its truck sales and repair building.

Prior to the parties executing the contract herein involved, defendants showed plaintiff sketches of the proposed project. The sketches called for septic tanks and drain fields to be used for sewage disposal on defendants' property and to be available for plaintiff's building. As early as July 6, 1972, defendants knew that the Umatilla County Health Department had rejected the use of septic tanks and drain fields. Defendants did not advise or give notice to plaintiff of this fact prior to the time plaintiff started construction of its building. The testimony shows that plaintiff had invested in excess of $300,000 in its building and facilities at the time of trial.

Prior to argument on appeal, the plaintiff filed with this court its motion for an order dismissing the defendants' appeal on the grounds that the defendants had complied with and acquiesced in the trial court's decree. We denied the motion "with leave to renew upon argument."

## ON MOTION TO DISMISS APPEAL

■ When a judgment or decree is entered against a party, the payment or compliance therewith will not preclude the party from maintaining an appeal unless it satisfactorily appears that the payment or compliance was voluntary, not coerced, and made with the view of settlement. *Housley et ux v. Linnton Plywood*

*Ass'n.*, 210 Or 520, 525, 311 P2d 432 (1957); *Cottrell et ux v. Prier et ux*, 191 Or 571, 231 P2d 788 (1951).

The record shows the construction of the defendants' service station has been virtually completed and a restaurant, operated by The Charburger, Inc., has been built and is open to the public. The sanitary sewer connection to the city of Pendleton facilities, to serve defendants' service station, the restaurant, and plaintiff's truck repair and sales buildings, have been completed. Plaintiff has hooked onto and is using the sanitary sewer facility and defendants have billed plaintiff for its purported share of the costs of such facility.

Defendants' continuation of the original development and construction of the project, subsequent to trial, was not undertaken with the intent to settle the litigation. Failure to proceed subjected the defendants to further liability. The decree also provided that defendants pay attorney fees to plaintiff pursuant to the terms of the contract. Defendants have not paid the judgment for attorney fees. If there remains a matter of payment of attorney fees to the successful party under the terms of the contract and thereby affected by the decision of this court, the appeal will not be dismissed. *Pacific N. W. Dev. Corp. v. Holloway*, 274 Or 367, 546 P2d 1063 (1976). The motion to dismiss is denied.

## ON THE MERITS

Defendants contend that the court erred in holding that defendants' delay in the construction of the service station and restaurant was not the result of matters beyond defendants' control.

The contract between the parties provided:

> "* * * * *.
>
> "7. Sellers further promise and agree that they will use every reasonable effort to cause said construction of the restaurant building and the truck stop service station to be completed as promptly as possible, provided

however, that the seller shall not be responsible for conditions beyond their control that result in delays in said construction, including but not limited to labor disputes, inclement weather, unavailability of necessary building materials, or act of God.

"* * * * *."

This case came to trial on October 17, 1974. Prior to trial, demand was made upon the court for special findings of fact and conclusions of law. ORS 17.431(1). The trial court found:

"Defendants seek to be excused from performance because of problems beyond their control: (1) petroleum shortage; (2) sewage disposal; (3) no restaurant lessee. Problems one and two are resolved at this time. Defendants permitted the restaurant lease to be in default for more than two years before terminating it. Defendants collected rent under the lease to June, 1973, but did not make a demand for performance until January 7, 1974. * * *

"* * * * *.

"Defendants contend also that the problem of sewage disposal would have prevented construction of the restaurant as it did the construction of the truck stop service station. However, it should be noted that the sewage disposal problem was resolved at a meeting of the Pendleton City Council on November 7, 1972, by approval of the connection to the City-Mission sewer line of the property of defendants.

"The defendants took no action with reference to the restaurant lease against Mr. and Mrs. Bergquist until June, 1974, by termination of the lease. However, they did continue to collect rent from the Bergquists until June, 1973.

"* * * * *.

"There is nothing in the contract that provides the construction of the service station is conditioned upon the construction of the restaurant. * * *.

"* * * * *.

"Equitable principles do not permit the defendants to represent to plaintiff the representations they made to induce plaintiff to expend the substantial sum of money which they expended, and then permit defendants not to

perform their promises by reliance upon a provision in the contract which is unrelated to their promise to build a truck stop service station.

"* * * * *"

The contract further provides, "Sellers further represent to the purchaser that they will construct on said Bonbright property a truck stop service station" and have the same "opened for business on or before December 1, 1972."

Defendants contend that they were prevented from performing the contract because of the petroleum shortage and allocation ordered by the Federal Energy Commission. Assuming this would prevent performance on defendants' part, the evidence shows that prior to trial and by letter of June 20, 1974, Phillips Petroleum Company advised defendants that they had received authorization to furnish petroleum to defendants. The Federal Energy Commission also advised the defendants that they had made an allocation authorizing the furnishing of petroleum products. Defendant George Bonbright testified and admitted these facts.

We reach the same conclusion as the trial court. Any problem regarding petroleum product supplies had been removed long before the case came to trial.

Defendants also argue that the failure to secure a lessee to build and operate a restaurant on the remaining 13 acres was beyond their control. The evidence shows, and the contract between plaintiff and defendants provided, that defendants had a lessee, Bergquist, to build and operate a restaurant under the name "Fancy Dan's." Defendants collected rental on this lease. Defendant George Bonbright admitted that he took no action to enforce the Bergquist lease, and require the construction of the restaurant, which defendants belatedly terminated. Because of the Bergquist default in the lease, defendants argue that it was not economically feasible or profitable for them to build a truck stop service station unless they had another restaurant lessee.

Defendant George Bonbright testified as follows:

"Q. Where in the contract of June 13, 1972, which is Exhibit 2 that I am laying before you, where in that contract is there a provision which authorizes you to hold up the building opening and operation of your truck stop service station until you have a restaurant in operation?

"A. I do not believe it will be in there.

"Q. You would agree then that the concern that you express about this restaurant is a concern that you have from an economic standpoint, but it arises outside of the contract?

"A. Yes.

"THE COURT: Mr. Bonbright, do I understand from your last statement that the reason you are not going ahead is because you don't have a restaurant?

"THE WITNESS: I have the restaurant. I have four different people that want to put a restaurant in. Their financial situation is excellent. * * *."

He also testified that money was tight and none was available for long-term loans. Defendants had a $435,000 commitment from the Small Business Administration to secure a loan for the building of their truck stop service station and sewage connection facilities.

In *Schafer v. Sunset Packing,* 256 Or 539, 542, 474 P2d 529 (1970), we stated:

"* * * It may have been unprofitable for defendant to have supplied the pickers, but the evidence does not establish that it was impossible. A mere showing of unprofitability, without more, will not excuse the performance of a contract. * * *"

In *Savage v. Peter Kiewit Sons',* 249 Or 147, 153, 432 P2d 519 (1968), we stated:

"* * * One purpose of a contract is to shift reasonably foreseeable business risks to the party promising the performance so that the promisee can devote his energies and capital to other matters. A mere showing of commercial unprofitability, without more, will not excuse the performance of a contract. * * *"

Furthermore, the record now shows that a restaurant has been built and is operating on the premises. We

conclude that defendants were not prevented from performing under the terms of the contract as a result of matters beyond their control.

The defendants also contend that the court erred in holding that a contractual duty was imposed upon defendants to construct sanitary sewer facilities for plaintiff's property under the theory of promissory estoppel. The contract between the parties did not specifically mention sewage disposal facilities being available to the property that plaintiff purchased from the defendants. As heretofore mentioned, prior to executing the contract covering the purchase of the two acres, defendants represented to the plaintiff that septic tanks and drain fields could be used for sewage disposal on the plaintiff's property. Defendants showed to plaintiff architectural and engineering sketches calling for septic tanks and drain fields. Unbeknown to plaintiff until after purchase of the property and substantial expenditures for the construction of its building, Umatilla County Health Department rejected defendants' proposed sewage disposal system. After it became apparent that the sewage system originally planned by defendants was unacceptable to the health authorities, the parties held two meetings to discuss the problem. Plaintiff's representatives at those meetings, including counsel, understood that defendants had agreed to resolve the problem by constructing a sewer line tying into the city of Pendleton sewage system. By the time of trial this was accomplished.

Mr. Bonbright testified as to what he said at the first meeting:

> "A. I told them I'd do everything I could to get something resolved because I couldn't proceed, myself, without having a sewer facility."

Mr. Bonbright testified as follows regarding the second meeting:

> "A. I told them I would do everything I could to get this thing resolved because, after all, I'm buying the ground, I own the ground, we are basing our entire

future in the oil business in relocating in this truck facility; and until we get it done, my income was being jeopardized tremendously until we can get ourselves back in business."

Mr. Yost, plaintiff's president, testified that the defendants were advised that plaintiff was looking to them to solve the sewage problem and that Mr. Bonbright said "he would get right on it and get something done."

The defendants argue that no promise was made to build a sewer line for plaintiff's use and that the statements made by Mr. Bonbright were too indefinite to be considered a promise.

The trial court found that

> "There was no satisfactory evidence that plaintiff was to pay any portion of the cost of construction of the sewer line from plaintiff's property to the City-Mission line except the payment of a hook-on fee.
>
> "* * * * *.
>
> "* * * [T]he sewage disposal problem was resolved at a meeting of the Pendleton City Council on November 7, 1972, by approval of the connection to the City-Mission sewer line of the property of defendants."

Permission of the city of Pendleton for the defendants to hook onto their sewage system was based on a design prepared by the defendants' engineer.

On the strength of defendants' statements at the two meetings, plaintiff completed the construction of its building and opened its business, contemplating that they would hook onto defendants' sewage line. In the interim, they obtained permission to temporarily dispose of their sewage at a cost of $800 per month.

Plaintiff argues that the above evidence and statements by defendants created a promissory estoppel by which plaintiff was entitled to rely upon the defendants' statement that they would construct the sewage line which would in turn service the plaintiff's property.

We do not need to decide if this created a promissory estoppel enforceable by plaintiff.[1] In *Bronson v. Moonen,* 270 Or 469, 474, 528 P2d 82 (1974), we held that the plaintiff, purchaser of a building lot, could rely upon an administrative rule in effect at the time of sale.[2] We allowed rescission by reason of the vendors' failure to comply with administrative rule of the Health Division of the Department of Human Resources which required a feasibility study for sewage facilities.

■ In the case at bar, if the defendants (sellers) had complied with the rule and asked for a feasibility study before contracting to sell to plaintiff they would have known that septic tanks and drain fields could not be used. If plaintiff had known that septic tanks could not be used, it would never have contracted to buy the two acres and proceed to construct the building as agreed. Defendants should not now be allowed to assert that they need not be required to furnish an adequate means for plaintiff to have sanitary facilities for the property it purchased. *See also Slocum v. Leffler,* 272 Or 700, 538 P2d 906 (1975).

Plaintiff is entitled to specific performance of its contract with defendants and the plaintiff will pay defendants the cost to "hookon" to defendants' sewer facilities, as ordered by the trial court.

Affirmed.

---

[1] This court has adopted the theory of promissory estoppel as expressed in Restatement of Contracts § 90. *Schafer et al v. Fraser et ux,* 206 Or 446, 468-69, 290 P2d 190 (1965).

[2] Oregon Administrative Rules ch 333, No. 41-022, filed April 21, 1972, HD 14, effective May 1, 1972. The rule is set forth fully in *Bronson v. Moonen,* 270 Or 469, 528 P2d 82 (1974).