IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

EXIT 282A DEVELOPMENT COMPANY, )
LLC, )
)
        Plaintiff, ) TC-MD 120764C
)
    v. )
)
CLACKAMAS COUNTY ASSESSOR, )
and DEPARTMENT OF REVENUE, )
State of Oregon, )
)
        Defendants. ) DECISION

Plaintiff appeals Defendant Clackamas County Assessor's (the County) disqualification

of 13.62 acres of land, identified as Account 00835369 (subject property), from farm use special

assessment for the 2012-13 tax year.

Plaintiff filed a Motion for Summary Judgment on May 2, 2013. Defendant Department

of Revenue (the Department) filed a Cross-Motion for Summary Judgment on May 2, 2013. The

County filed a Cross-Motion for Summary Judgment on May 3, 2013. Oral argument was held

on June 20, 2013. Erick J. Haynie, Attorney at Law, Perkins Coie, LLP, represented Plaintiff.

Douglas M. Adair, Senior Assistant Attorney General, represented the Department.

Rhett C. Tatum, Assistant County Counsel, represented the County.

## I. STATEMENT OF FACTS

The parties agree to the following stipulated facts. Plaintiff has owned the subject

property since December 24, 2008. (Stip Facts at 1.) Chris Maletis III (Maletis) manages the

LLC that owns the 13.62 acre subject property. (*Id.*) Plaintiff also owns properties both north

and south of the subject property, which have been used primarily to grow hay or other field

crops. (*Id.* at 2.)

Prior to Plaintiff's ownership of the subject property, Clearwater Beverages, Inc. (Clearwater) owned the property between October 30, 2003 and December 24, 2008, with Maletis as President of Clearwater. (*Id.* at 2.) Clearwater purchased the subject property from Stanley V. Shepard and Bradley C. Shepard (the Shepards); Clearwater then leased the subject property back to the Shepards for a period of 20 months. (*Id.*) Prior to Plaintiff's purchase, the subject property was improved with heated greenhouses totaling approximately 356,000 square-feet of space. (*Id.*)

Shortly after Clearwater's purchase in the fall of 2003, the subject property suffered damage from a snow and ice storm in early January 2004. (*Id.* at 3.) That storm caused approximately 125,000 square-feet of greenhouse space to collapse. (*Id.*) On May 11, 2005, vandals "stole copper wiring from the subject property, thereby damaging electrical panels and overhead connections." (*Id.*) "Plaintiff maintains that this event caused significant physical damage to the electrical systems associated with the subject property." (*Id.*) On June 30, 2005, the Shepards' lease ended and they vacated the property. (*Id.*)

On December 27, 2006, Maletis, on behalf of Clearwater Beverages, appealed to the Clackamas Board of Property Tax Appeals (BOPTA) for the 2006-07 tax year, seeking a reduction in the real market value (RMV) of the subject property from $1,275,541 to $103,304. (*Id.*) Maletis requested the building value be removed because of the damage to the greenhouses. (*Id.*) He also requested a lower land value. (*Id.*) BOPTA agreed that a reduction was warranted, and entered an order on April 11, 2007, reducing the total (combined) RMV to $384,181, leaving the land at its previous value, and significantly reducing the building value to $78,260. (*Id.*)

/ / /

As part of that BOPTA appeal process, Tony Hunter (Hunter), the appraiser for the County, visited the subject property on March 17, 2007, and recommended to BOPTA a reduction in value. (Decl of Hunter at 3, Ex C.) Hunter states that the purpose of his March 2007 inspection was "to determine whether a reduction [in value was] warranted[;]" Hunter notes that during his review of the condition of the greenhouses that had been used in the farming operation, but were subsequently damaged by inclement weather and vandals, he "did not see any evidence of farm use in the subject property[.]" (*Id*.)

Approximately five years later, "on June 28, 2012, Hunter[,] on behalf of [the County], wrote Plaintiff a letter [advising it] that the [subject] [p]roperty was no longer being used as farmland and would, therefore be removed from Special Assessment as Zoned Farm Land, effective January 1, 2012." (Stip Facts at 3-4; Ptf's Compl at 3.) That letter served as the notice of disqualification required by statute. Plaintiff timely appealed to this court disputing that disqualification. (Ptf's Compl at 1.)

Plaintiff and the County disagree about whether, prior to the June 28, 2012, disqualification, there was any contact between the parties following the March 17, 2007, site visitation by Hunter. Hunter states that he telephoned Maletis "[s]oon after the inspection." (Decl of Hunter at 3.) Hunter further states that "during that conversation [he and Maletis] discussed the future intended use of the subject property," and that Maletis "stated that he was not sure how the property would be used in the future or if it would be devoted to farm use." (*Id*.) Maletis, on the other hand, states that he contacted the County about the removal of the damaged greenhouses because he felt a reduction in the value of the improvements was appropriate, and that "[t]o the best of [his] knowledge, the [County] mentioned nothing about disqualification from special assessment * * *." (Decl of Maletis at 3.) Furthermore, Maletis

states that "[a]t no time prior to receiving such notification of disqualification did the [County] contact me, or to my knowledge any other agent of Plaintiff, to discuss the prior history of use, the potential for disqualification, any request for inspection, or to otherwise discuss any aspect of the Property and its tax assessment." (*Id.*)

## II. ANALYSIS

The issue in this case is twofold: whether the County complied with the procedural requirements of ORS 308A.113 and OAR 150-308A.113[1] leading up to a Notice of Disqualification, and whether Plaintiff used the subject property within the definition of "Farm Use" as described in ORS 308A.056 and OAR 150-308A.056(2)(b). If the County did not comply with the disqualification procedures required by OAR 150-308A.113, then the disqualification of the subject property was not valid and the court need not address the second issue of farm use. The parties submitted cross motions for summary judgment.

The standard for summary judgment is provided by Tax Court Rule (TCR) 47 C, which states in pertinent part:

> "The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial."[2]

The subject property was receiving special assessment as zoned farmland. (*See* Stip Facts at 2-4.) Land within an exclusive farm use zone is entitled to special assessment provided

---

[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2011.

[2] TCR 47 is made applicable through the Preface to the Magistrate Division Rules, which states in pertinent part, that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

it "is used exclusively for farm use." ORS 308A.062(1). The County is required to disqualify land from special assessment under ORS 308A.062 "upon the discovery that the land is no longer being used as farmland[.]" ORS 308A.113(1)(a). The assessor is required by statute to send notice of any disqualification. ORS 308A.718(1)(a). The requirements for disqualifying EFU zoned farmland from special assessment are set forth in an administrative rule promulgated by the Department under OAR 150-308A.113. Duly promulgated administrative rules have the same force and effect as statutory law. *Bronson v. Moonen*, 270 Or 469, 476, 528 P2d 82 (1974) ("Administrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute").

OAR 150-308A.113(1) requires the county assessor to take several actions prior to disqualifying EFU land from farm use special assessment:

> "(a) Before Exclusive Farm Use (EFU) land is disqualified from farm use assessment due to discovery by the assessor that the land is no longer being devoted to a farm use, the assessor must:

> "(A) Make a reasonable effort to contact the owner, owner's agent or person using the land;

> "(B) Make a site inspection of the property; and

> "(C) Request the recent history of the property's use.

> "(b) The assessor must make a record of the inspection that includes when the inspection was made, who made the inspection, copy of contact letter(s) or record of other means of contact, information from the person contacted, and notations of the conditions found. Notations about the conditions found may include the farm uses being made of the property, areas having no apparent farm use, vegetation on the property and its condition, whether the property is fenced and the fence's condition, and other conditions of the property that indicate a farm use or lack of farm use. The record of inspection must be retained in the assessor's office for at least three years."

Thus, the four requirements can be succinctly stated as: 1) a reasonable effort to contact the owner; 2) a site inspection of the property; 3) a request by the County for a recent history of the

property's use; and 4) a record by the assessor of the inspection, noting the conditions found related to farming or the lack thereof.

In reviewing an agency's interpretation of its own administrative rule, this court will uphold the agency's "plausible interpretation" of that rule unless it is "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law * * *." *Don't Waste Oregon Comm. v. Energy Facility Siting Council,* 320 Or 132, 142, 881 P2d 119 (1994).

In this case, the County did not strictly comply, in a contemporaneous fashion, with any of the four requirements in the rule. The County disqualified the subject property by letter dated June 28, 2012. Prior to that disqualification, no one from the County made any effort to contact Plaintiff, make an actual site inspection of the property, request a recent history of the property's use, or make a record of recent inspections. Those inspection records would have to include when an inspection was made, who made the inspection, and what information was obtained from any persons contacted. OAR 150-308A.113.

The County recognizes that the rule "proscribes a process for disqualification of land from farm use special assessment[,]" but argues that the procedures "are not applied rigidly or in a manner that is divorced from their underlying purpose." (Def Cty's Cross Mot for Summ J at 5.) The County contends that it satisfied the requirements of the rule before disqualifying the subject property from special assessment. (*Id*. at 6.)

The County argues it "satisfied the inspection requirement with a series of inspections beginning on March 17, 2007," when the County representative Hunter visited the property as part of a value appeal filed with BOPTA. (*Id*. at 5.) The County also argues that the same individual, Hunter, drove by the property in four of the next five years prior to the June 2012

disqualification. (*Id*. at 6.) Hunter states that he drove by the subject property "[s]ometime in early 2008," and again "[s]ometime in both early 2010 and early 2011[.]" (Decl. of Hunter at 4.) The final "inspection" was a drive-by on June 18, 2012, "to confirm that [the subject property] was still not being put to farm use." (*Id*.) The County reiterates that point in an effort to support its argument that it conducted a total of five "inspections" of the subject property prior to its disqualification. (Def Cty's Cross Mot for Summ J at 5-6.)

The County did a very poor job of recording its inspections when measured against the requirement in OAR 150-308A.113(1)(b). The "record of the inspection" required by the rule must "include[] when the inspection was made, who made the inspection, [a] copy of contact letter(s) or record of other means of contact, information from the person contacted, and notations of the conditions found. Notations about the conditions found may include the farm uses being made of the property, areas having no apparent farm use, vegetation on the property and its condition, whether the property is fenced and the fence's condition, and other conditions of the property that indicate a farm use or lack of farm use. The record of inspection must be retained in the assessor's office for at least three years." (*Id*.) Hunter's declaration prepared for trial indicates that he drove by the property "sometime" in "early 2010 and early 2011." (Decl of Hunter at 4.) The County did not direct the court to any specific record prepared at the time of the alleged inspections noting the date of the inspection or any conditions observed or persons spoken with.

The discussion immediately above covers the second and fourth requirements of the rule, to wit, a site inspection and a record of such inspection. The court now turns to the first and third requirements.

/ / /

The first requirement of the rule is that the County "[m]ake a reasonable effort to contact the owner[,]" OAR 150-38A.113(1)(a)(A). The County argues that it made a reasonable effort "[b]oth prior to and after the March 17, 2007 inspection[.]" (*Id.* at 6.) Citing Hunter's Declaration, the County states that Hunter spoke with Maletis in 2007 regarding a reassessment of the subject property and Maletis told Hunter that he was not sure about the future use of the property, "or if it would be devoted to farm use." (Decl. of Hunter at 3.) Recognizing that Hunter's purpose in calling Maletis "was to follow-up on the inspection related to the [2007] BOPTA appeal," the County insists that "the specific purpose [of the contact] is irrelevant." (*Id.*)

Turning to the third requirement under ORS 150-308A.113(1)(a)(A), which is that the County "[m]ake a reasonable effort to contact the owner, the owner's agent or person using the land," the County "acknowledges that it did not formally contact [Plaintiff] to request the history." (Def Cty's Cross Mot for Summ J at 7.) Remarkably, the County's defense for omitting that step is that "such a request * * * would have served no purpose." (*Id.*) That position is particularly striking in light of the fact that the County did not request a recent history of the property's use or conduct an actual on-site inspection of the property within five years of the date of disqualification. Part of Plaintiff's substantive argument in favor of continued special assessment is that the property qualifies as wasteland and the County states that "a request for a recent history of the property would not necessarily have allowed [P]laintiff to demonstrate that the property is wasteland." (*Id.*) That argument overlooks the purpose of the owner contact requirement which, when coupled with the requirements of a site inspection and a recent history of the property's use, is designed to give the property owner an opportunity to enlighten the County as to the past and present use of the property rather than leaving it to the County to make

///

a disqualification decision based on a single site inspection five years prior to a disqualification followed by four drive-by inspections.

The court disagrees with the County's assertion that it complied with the requirements in the OAR 150-308A.113(1). The primary case relied on by the County is *Boardman Tree Farm, LLC v. Morrow County Assessor (Boardman)*, ___ OTR ___ (Sept 20, 2011). The court finds the *Boardman* case clearly distinguishable.

In *Boardman*, the taxpayer's management company worked cooperatively with the assessor in an effort to convince the legislature to make changes to the law. ___ OTR at ___ (slip op at 4). This change in law would have enabled the taxpayer's property to remain in farm use special assessment under its current use – the growing of certain trees that, under the existing law, had to be harvested within 12 years. *Id.* The parties did not succeed in their legislative efforts to extend in the harvest period from 12 to 20 years. *Id.* Accordingly, some of the taxpayer's property no longer qualified for farm use special assessment. *Id.*

During the legislative effort by the taxpayer's agent and the assessor, the assessor became aware that some of the acreage had trees that were at or beyond the 12 year harvest deadline, thus rendering that property ineligible for special assessment. *Id.* The record in *Boardman* is clear that: 1) the County sent a letter to the taxpayer's agent "soliciting precise information regarding the acreage that would no longer be eligible for special assessment[;]" and that 2) the taxpayer's agent "provided the assessor with a map of the subject properties showing the acreage that was planted with trees 12 years or older." *Id.* The *Boardman* facts also state that the assessor sent the letter requesting information from the taxpayer because it had begun the process of disqualifying some of the taxpayer's property from special assessment. *Id.*

The court's focus in the *Boardman* case was tied to the taxpayer's primary argument that

"the assessor never conducted a 'site inspection' of the subject property, as required by OAR 150-308A.113(1)(a)(B)." __ OTR at __ (slip op at 6). The *Boardman* court noted that the site inspection and record-keeping requirements were added by the Department through its rulemaking process in 2000. *Id.* at 9. The stated reasons for those additions were "(1) to ensure that a given property is, in fact, no longer entitled to EFU special assessment and (2) to ensure that a disqualification will be upheld should a taxpayer choose to challenge it." *Id.*

In finding that the assessor satisfied the site inspection requirement in the rule, the court noted several important factors. First, "[t]he assessor succeeded in contacting the owner of the [] property and * * * received detailed information concerning the past use of the property and the acreage to be disqualified." *Id.* at 11. Second, the assessor had the taxpayer's own self-incriminating information about the non-qualifying use of portions of the property. *See id.* at 4, 11. Third, the assessor "provided the court with 26 dates in the months leading up to the disqualifications that business in various parts of the county required him to pass through the [taxpayer's] property." *Id.* at 5. The *Boardman* court further noted that "[o]n some of these occasions the assessor stopped on the [taxpayer's] property to observe features like the size of the leaves on the trees, planting patterns, and of the drip irrigation system * * *." *Id.* Finally, the assessor also drove by the [taxpayer's] property roughly twice each month in addition to the 26 documented instances. *Id.* Based on the accumulated information, both from the taxpayer and the assessor's own observations, it was clear to the court in *Boardman* that the Department's two goals – ensuring the property is, in fact, no longer entitled to EFU special assessment and ensuring that disqualification would be upheld if challenged by the taxpayer – were met. *Id.* at 14-15. The court noted that its analysis of the rule's site inspection requirement was considered

/ / /

in the overall context of the rule, and that two of the four requirements, contact and property history information from the taxpayer, were unquestionably satisfied. *Id*. at 11-14.

In the present case, Hunter did not contact Plaintiff or an agent of Plaintiff for several years prior to its disqualification. Furthermore, the alleged 2007 contact was related to an on-site inspection regarding the valuation of the property for a 2006-07 BOPTA appeal. The County insists that Hunter telephoned Maletis, following up on that 2007 inspection several months later, thereby satisfying the contact requirement. Hunter states that he asked about the future use of the property during that conversation,. Hunter apparently drove by the subject property in 2008, and then drove past the property some time each year in three of the four subsequent calendar years leading up to 2012. Specific dates and any observations that may have been made are not documented. Again, Hunter states that he drove by the subject property "[s]ometime in early 2008," and again "[s]ometime in both early 2010 and early 2011[.]" (Decl. of Hunter at 4.)

The court fails to see how this activity satisfies the requirements of the rule, or how it is similar to the *Boardman* case upon which the County relies. The primary activity in the instant case occurred in 2007, some five years prior to the disqualification. There is no claim by the County that anyone from the County contacted Plaintiff or its agent at any point within years of its disqualification. Nor does the County claim to have made an actual site inspection, relying instead on the inspection in 2007 and four subsequent occasions where Hunter drove past the subject property. The County concedes that it never made a request for the recent history of the property's use. The County has not presented any form of records that would satisfy OAR 150-308A.113(1)(b). Under these circumstances, the court rejects the County's position that it complied with the rule based on *Boardman*.

Factually this case has more in common with *Evergreen Agric. Enter., Inc. v. Yamhill*

*County Assessor*, TC-MD 101181B, 2011 WL 6338839 (Dec 16, 2011) (*Evergreen Agricultural*), where the court found that the assessor failed to comply with the requirements of OAR 150-308A.113(1) prior to disqualifying the property. In *Evergreen Agricultural*, the assessor was found to have satisfied the site inspection requirement, but failed to attempt to contact the property owner prior to sending the notice of disqualification and also failed to request a recent history of the property's use. *Id.*, WL 6338839 at *5-6. In that case, two representatives from the assessor's office physically visited the property roughly four months prior to sending notice of disqualification, and "took notes and photographs of the subject property." *Id.*, WL 6338839 at *2. The problem for the County in this case is that it not only failed to make the required contact with the property owner or request a recent history of the property's use, but its site inspection occurred some five years prior to the disqualification, followed by four visual inspections that were poorly recorded in the County's records and appear to have been noted after the fact.

The court agrees with Plaintiff that the County failed to comply with the requirements of the rule prior to disqualifying the property and that its disqualification is therefore invalid. Having determined that the disqualification is a nullity, the court need not address the question of whether the subject property qualifies for farm use special assessment, and will not do so.

### III. CONCLUSION

After carefully considering the parties' pleadings, stipulated facts, and written arguments, the court finds that the County failed to comply with the requirements of OAR 150-308A.113(1) prior to disqualifying the subject property from farm use special assessment as a matter of law. The County's disqualification of the subject property from farm use special assessment for the 2012-13 tax year is therefore invalid. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is granted, the motion of the County is denied, and the motion of the Department is denied.

Dated this ____ day of July 2013.

_____
DAN ROBINSON
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This Decision was signed by Magistrate Dan Robinson on July 30, 2013. The court filed and entered this Decision on July 30, 2013.***