No. 271 April 24, 2024 263

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

GUNNER, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

John D. MILLER,
an individual,
*Defendant-Respondent.*

Marion County Circuit Court
19CV06925; A178469

J. Channing Bennett, Judge.

Argued August 23, 2023.

Zachary Dablow argued the cause and filed the briefs for
appellant.

Tricia M. Olson argued the cause for respondent. Also on
the brief were Andrew D. Campbell and Heltzel Williams
PC.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán,
Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Plaintiff purchased an industrial property from defendant and afterwards discovered an active underground storage tank (UST) beneath a concrete planter box. Plaintiff paid to decommission the UST and subsequently filed a breach of contract claim against defendant to recover the decommissioning costs on the basis that defendant fraudulently misrepresented the existence of the UST. The trial court entered a judgment in favor of defendant. Plaintiff appeals that judgment and in its sole assignment of error, asserts that the trial court erred by granting defendant's motion for directed verdict. We conclude that because plaintiff had actual knowledge of the existence and location of the UST prior to the purchase, no reasonable factfinder could find in its favor, and therefore, defendant was entitled to judgment as a matter of law. We therefore affirm.

We review a trial court's decision to grant a motion for directed verdict for legal error. *Kelley v. Washington County*, 303 Or App 20, 21, 463 P3d 36 (2020). "[A] directed verdict is appropriate only in the exceptional case where reasonable people could draw only one inference and that inference is that defendant was not liable." *Johnson v. Keiper*, 308 Or App 672, 678, 481 P3d 994 (2021). Accordingly, "we view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party—in this case, plaintiff[]—and determine whether any reasonable factfinder could find in their favor." *Sherertz v. Brownstein Rask*, 314 Or App 331, 333, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022).

We state the facts consistently with our standard of review and further note that a detailed recitation of the facts would not benefit the parties, the bench, or the bar. Accordingly, we describe the facts only to the extent necessary to explain our decision.

Before defendant John Miller purchased the property in 2004, he ordered an environmental site assessment, which revealed an abandoned UST and fuel pump island. Miller's predecessor in interest reported that the UST had been decommissioned. Soil tests at that time revealed no

contaminants in the vicinity of the UST. Miller purchased the property, and between 2008 and 2010, he installed two concrete planter boxes directly above the fuel pump island and UST as part of an asphalt regrading and landscape project.

Before purchasing the property in 2018, plaintiff Gunner, LLC (Gunner) hired Point Source Solutions, LLC (Point Source) to conduct an environmental site assessment. As part of its review, Point Source asked Miller to complete a four page environmental site assessment questionnaire. The pertinent questions and answers included:

"[Question]:  Are there currently any registered or unregistered storage tanks (above or underground) located on the Property?

"[Answer]: No.

"[Question]:  Do you have any prior knowledge that there have been previously, any registered or unregistered storage tanks (above or underground) located on the Property?

"[Answer]:  Yes.

"[Question]: Are there currently any vent pipes, fill pipes, or access ways indicating a fill pipe protruding from the ground on the Property or adjacent to any structure located on the Property?

"[Answer]:  Yes.

"[Question]: Do you have any prior knowledge that there have been previously, any vent pipes, fill pipes, or access ways indicating a fill pipe protruding from the ground on the Property or adjacent to any structure located on the Property?

"[Answer]:  No."

Miller also provided the 2004 environmental report and soil test results to Point Source. Point Source identified a UST decommissioned in-place in the general vicinity of the planter boxes on its written report for Gunner prior to Gunner's purchase of the property.

After purchasing the property, Gunner removed the planter boxes and discovered a metal pipe that was part of a fuel island connected to the UST which, as it turned out, had

not been decommissioned. Gunner incurred approximately $10,000 in decommissioning and removal costs related to that UST. It then filed the underlying breach of contract suit against Miller to recover those costs on a theory of fraudulent misrepresentation based on Miller's failure to disclose the existence of the UST in his questionnaire responses and concealment of the pipe beneath the planter boxes. At trial, Gunner's principal and its business manager each testified that, based on a review of the environmental reports, they were aware of the existence and general location of the UST at the time of purchase, although they believed that it had been decommissioned. Miller moved for a directed verdict at the close of all the evidence. The trial court granted the motion, reasoning that "there is a disclosure of a tank in advance of the sale. That seems to be the end of the inquiry."

On appeal, Gunner argues that Miller actively concealed the UST through his responses to the questionnaire and by building the planter boxes over the vicinity of the UST, which triggered a duty on Miller's part to fully disclose the UST and its current status. In Gunner's view, Miller's disclosures were insufficient because the disclosures indicated that the UST had been decommissioned when in fact, it had not been. Miller contends that, notwithstanding the questionnaire responses and planter boxes, his disclosure of the previous environmental assessment and soil tests was sufficient because those reports revealed the existence and location of the UST and provided the information in Miller's possession regarding the status of the UST.

To prove actionable fraud, a party must establish the following: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it should be acted upon, (6) the injured party's ignorance of its falsity, (7) the injured party's reliance upon the truth of the representation, and (8) the injured party's right to rely on its truth. *Gardner v. Meiling*, 280 Or 665, 671, 572 P2d 1012 (1977).

A false representation may result from an affirmative misrepresentation or actions that conceal a material fact. *Ogan v. Ellison*, 297 Or 25, 34, 682 P2d 760 (1984). A party conceals a fact through "words or acts which create

a false impression covering up the truth," or actions that "remove an opportunity that might otherwise have led to the discovery of a material fact." *Paul v. Kelley*, 42 Or App 61, 66, 599 P2d 1236 (1979) (internal quotation marks omitted). "[W]here there has been an active concealment[,]" the injured party need not prove a duty to speak, and the concealing party has a duty to sufficiently disclose what it has concealed. *See id.* at 65-66.

If the party claiming to have been defrauded knows or has reason to know that the alleged misrepresentation is false or otherwise has knowledge of the truth, their claim based on that misrepresentation necessarily fails as a matter of law. *See Fleishhacker v. Portland News Pub. Co.*, 158 Or 476, 478-79, 483, 77 P2d 141 (1938) (explaining that the "vital question" on appeal of a judgment setting aside a verdict in favor of the defendant on a cross-claim for fraudulent inducement into a stock purchase agreement was whether the only inference to be drawn from the evidence was that the defendant had knowledge of the matter it claimed had been fraudulently concealed from it at the time it executed the contract). Actual knowledge defeats a fraud claim because one cannot claim to have reasonably relied on a representation that is at odds with what one knows about the thing represented. *See Andrews v. United Finance Company*, 204 Or 429, 435, 283 P2d 652 (1955) (holding that as a matter of law, plaintiff did not rely on a representation because of "the formal acknowledgement by him in a written instrument of the existence of a fact which is utterly inconsistent with his contention that he was deceived"); *see also Merten v. Portland General Electric Co.*, 234 Or App 407, 417, 228 P3d 623 (2010) (explaining that the right to rely element of a fraud claim requires proof of reasonable reliance measured "in the totality of the parties' circumstances and conduct" (internal quotation marks omitted)).

We conclude that because Gunner had actual knowledge of the existence of the UST, it was not reasonable for him to rely on the representations made in response to the questionnaire. To be sure, Miller's answers raised some uncertainty about whether there were currently any USTs on the property, and neither Point Source nor Gunner would have

been able to visibly locate the UST during their site inspections because the metal pipe was concealed by the planter boxes. However, Miller made sufficient disclosures related to the concealed UST. Specifically, he provided the previous environmental reports to Point Source, which revealed an abandoned UST beneath a pump island. Gunner's agent testified that, based on those disclosed reports, she knew that the UST existed on the property at the time of purchase. Point Source included those reports and soil tests results in its own report to Gunner. The trial court did not err in directing a verdict in Miller's favor on this record, where no reasonable factfinder could find in plaintiff's favor.

Affirmed.